UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
IN RE EQUITY RESIDENTIAL AMENITY FEE    )        Case No. 1:12-cv-10779-RWZ
LITIGATION                                          )
                                                    )        **LEAVE TO FILE GRANTED ON**
                                                    )        **FEBRUARY 14, 2013**
This Document Relates To:                           )
All Actions                                         )
_____           )

**CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, Brian Perry, Kim Perry, and Cheryl Miller ("Plaintiffs"), by and through their

undersigned counsel of record, on behalf of themselves and all others similarly situated, submit

the following Consolidated and Amended Class Action Complaint against Defendant Equity

Residential Management LLC ("ERM" or "Defendant"), and based upon personal knowledge as

to their own acts and circumstances and based upon information and belief as to all other

matters, allege as follows.

## I.      SUMMARY OF THE CASE

1.      Plaintiffs bring this action for redress of ERM's unlawful practice of charging

required, non-refundable fees, called "amenity fees," "move-in fees," or "community fees"

(referred to collectively as "Amenity Fees") and application fees and pet fees to tenants at its

Massachusetts rental properties.  The Amenity Fees, application fees and pet fees are sometimes

collectively referred to herein as the "Fees."  The Fees, charged to Plaintiffs and other tenants at

ERM's various Massachusetts properties (the "Properties")[1] violate G.L. c. 186, § 15B, the

Massachusetts Security Deposit Law.  Plaintiffs, on behalf of themselves and the Class, seek

refund or reimbursement to ERM's current and former Massachusetts tenants of the Fees they

paid during the Class Period and seek an order, in the form of injunctive relief, directing ERM to

cease its practice of charging these unlawful Fees.  Plaintiffs bring this action as a class action on

behalf of themselves and a class comprised of all current and former tenants at the Properties

who paid any Fees, during the period from May 1, 2008 through the date of judgment (the "Class

Period").

## II.      THE PARTIES

2.      Plaintiffs Brian Perry and Kim Perry ("the Perrys") are individuals residing at 951

Huntington Drive, Elk Grove Village, Illinois.  During the period from approximately December

23, 2011 through approximately the end of June, 2012, the Perrys were tenants at Equity

Longview Place, 70 Hope Avenue, Waltham, Massachusetts.

3.      Plaintiff Cheryl Miller ("Miller") is an individual residing at 14 Pinckney Street,

Unit # 301, Boston, Massachusetts.  During the period from approximately May 1, 2010 through

approximately July 7, 2012, Miller was a tenant at 10 Emerson Place, Apartment 18B, Boston,

Massachusetts.

4.      Defendant ERM is a Delaware limited liability company, with a principal place of

business in Chicago, Illinois and a regional office in Wellesley, Massachusetts.  ERM operates,

manages and leases approximately 31 residential apartment complexes in Massachusetts. ERM is

identified as the lessor on Plaintiffs' leases and is and was the lessor on leases for more than

6,000 residential rental units in Massachusetts. *See* Exhibit A.

---

[1] A list of the Properties is attached hereto as Exhibit A.

### III.   JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, Plaintiffs and Defendant are residents of different states, and the state of residence of most Class members (Massachusetts) is different from the state of residence of Defendant (Illinois or Delaware).

6.      This Court has personal jurisdiction over Defendant because it transacts and has transacted business in Massachusetts by leasing and managing residential rental units in Massachusetts, and because the acts or conduct that are the subject matter of this action arose from Defendant's transaction of business in Massachusetts.

7.      Venue is proper in this Court because Plaintiffs reside in this District, ERM leases and/or manages residential rental units in this District, and the acts giving rise to the causes of action asserted herein occurred in this District.

### IV.   FACTUAL ALLEGATIONS

#### A.   The Massachusetts Security Deposit Law

8.      The Massachusetts Security Deposit Law, c. 186 §15B, unambiguously states:

"(b) At or prior to the commencement of any tenancy, no lessor may require a tenant or prospective tenant to pay any amount in excess of the following:

(i)      rent for the first full month of occupancy; and,

(ii)     rent for the last full month of occupancy calculated at the same rate as the first month; and,

(iii)    a security deposit equal to the first month's rent provided that such security deposit is deposited as required by subsection (3) and that the

> tenant is given the statement of condition as required by subsection (2); and,

(iv)     the purchase and installation cost for a key and lock."[2]

9.      A lessor cannot require tenants to pay any amounts of money for any items or services beyond the specific, above-enumerated four items.

10.      The Attorney General has similarly promulgated administrative regulations which expressly prohibit a lessor from charging any amounts in addition to these four permissible charges.  *See* 940 C.M.R. §3.17(4)(a).  Any additional payments required by a lessor for any other items or services are considered an unlawful and/or deceptive business practice proscribed by G.L., c. 93A, § 2.  *See id.*

11.  The Attorney General's regulations also define "owner" to include persons or entities who manage the property on behalf of the owner and who control the owner of the property.  *See* 940 C.M.R. § 3.01 (defining "owner" to include "one who manages, controls, and/or customarily accepts rent on behalf of the owner.").

**B.      ERM's Unlawful Amenity Fee**

12.      ERM is identified as the "Lessor" on Plaintiffs' leases and is the lessor for the leases on all rental units at the Properties.  ERM signs the leases as agent for the owner, ERP Operating Limited Partnership (an affiliate of ERM).

---

[2]  Subsection (3) referenced above requires, among other things, that any security deposit received by a lessor be held in a separate, interest-bearing bank account, that the tenant be given a receipt for the deposit, indicating the name and address of the bank in which the deposit is held, the account number and the amount of the deposit, and that the deposit be returned to the tenant within 30 days after termination of the tenancy or occupancy, subject to certain specifically allowable deductions.  c. 186, § 15B(3).  Subsection (2) referenced above requires that a tenant from whom a security deposit is received be provided, at the time of receipt by the lessor of the deposit, a written statement of the then present condition of the leased premises.  *Id.*, § 2.

13.     At or prior to the commencement of each tenancy at the Properties, ERM charges each tenant a one-time, non-refundable fee, called at various times an "amenity fee, or a "move-in fee.

14.     More recently, ERM has changed name of the Amenity Fee to something called a "community fee."  As is the case with the prior version of the Amenity Fee, the "community fee" is mandatory and a condition of the tenancy.

15.     During most of the Class Period, including the time that Plaintiffs were tenants at the Properties, ERM charged each new tenant an Amenity Fee (called either an "amenity fee" or a "move in fee") at or about the time of the execution of the lease.  More recently, on information and belief, ERM, in an effort to evade the restrictions of the Security Deposit Law, began charging tenants, at the commencement of their tenancy, a one-time, non-refundable fee called a "community fee," but does not **collect** that fee until after the first month of the tenancy. According to one current tenant at Emerson Place, ERM is charging a "community fee" of $500, disclosed and charged up front, but ERM defers collection of the fee until after the first month of the tenancy.  This community fee is a blatant, but unsuccessful attempt to avoid the statutory restrictions.  Plain and simple, the community fee is the same as the "amenity fee" or "move in fee, with the same legal effects and consequences.  Accordingly, the defined term, "Amenity Fee," as used herein, includes the "community fee."

16.     The Amenity Fee is charged at or prior to the time of execution of the lease, though in certain cases, as noted above, it may be collected at a later time.

17.     The Amenity Fee is a one-time fee in that it is paid once during a particular tenant's tenancy, even if that tenant renews his or her tenancy for multiple annual terms.

18.     The Amenity Fee is non-refundable.

19.     The Amenity Fee is not optional — it is imposed upon tenants at the Properties as a condition of their tenancy.

20.     Defendant continues to charge Amenity Fees to tenants at the Properties, though as noted above, it is now labeled as a "community fee," and collection of the fee is deferred.

21.     ERM is responsible for the decision to charge tenants in Massachusetts a mandatory Amenity Fee.

22.     As noted above, the Amenity Fee is a one-time, non-refundable fee, and was, up until the recent switch to the later-collected community fee, paid at or about the time of the execution of the lease, and was listed in ERM's Residential Lease Term Sheet as a non-refundable fee in the section entitled, "Total Other Fees and Charges."  *See* Defendant's Residential Lease Term Sheet for Miller's lease term commencing 5/1/2010, a copy of which is annexed hereto as Exhibit B.

23.     The Amenity Fee is clearly not a security deposit.   First, Defendant does not comply with the requirements of c. 186, § 15B with respect to the Amenity Fee.  Second, as a non-refundable fee, the Amenity Fee is, by definition, not a security deposit.  Finally, Defendant's Lease Terms and Conditions specifically provide that the Amenity Fee is not a security deposit:

> ONE-TIME FEES:  If you have paid other fees and charges as set forth in the Total Other Fees and Charges section of the Term Sheet, you acknowledge and understand that such other fees and charges are not refundable, are not considered to be a security deposit or part of the Total Deposits, and will not be applied as a credit toward any amounts owing by you at the time you move out.[3]

---

[3] *See* Defendant's Residential Lease—Terms and Conditions (Massachusetts) for Miller's lease commencing 5/1/2010, Section 9, a copy of which is annexed hereto as Exhibit C.

24.     The Amenity Fee is not first month's rent or last month's rent.  It is not refundable, it is not to be applied toward rent for the first or last month of the tenancy, it is not used to offset rent for those periods, and it is not equivalent in amount to the monthly rent.  In addition, Defendant did not, with respect to the Amenity Fee, comply with the provisions of c. 186 § 15B(2)(a) for holding the fee as last month's rent.

25.     The Amenity Fee was not used to reimburse Defendant for the cost of a key and lock.

**C.      ERM's Unlawful Application Fee**

25.     ERM charges each prospective tenant who applies for a tenancy at one of the Properties a non-refundable application fee of $50 per person.[4]  In other words, if two persons are seeking to lease an apartment as co-tenants, ERM charges each prospective co-tenant a separate $50 application fee.

26.     The application fee is non-refundable.

27.     The application fee is not optional — it is imposed upon prospective tenants at the Properties as a condition of their lease application.

28.     Defendant continues to charge application fees to prospective tenants at the Properties

29.     The application fee is clearly not a security deposit.   First, Defendant does not comply with the requirements of c. 186, § 15B with respect to the application fee.  In addition, as a non-refundable fee, the application fee is, by definition, not a security deposit.

---

[4] *See* Information Summary Sheet from The West End Apartments, "Application Process," a copy of which is annexed hereto as Exhibit D.

30.     The application fee is not first month's rent or last month's rent.  It is not refundable, it is not to be applied toward rent for the first or last month of the tenancy, it is not used to offset rent for those periods, and it is not equivalent in amount to the monthly rent.  In addition, Defendant did not, with respect to the application fee, comply with the provisions of c. 186 § 15B(2)(a) for holding the fee as last month's rent.

31.     The application fee was not used to reimburse Defendant for the cost of a key and lock.

**D.     ERM's Unlawful Pet Fees**

32.     ERM charges its Massachusetts tenants pet fees, consisting of a $250 up front, one-time fee and a monthly fee of $30.[5]

33.     The pet fees are non-refundable.

34.     The pet fees are required for all pet- owning tenants and are a condition of the tenancy for those tenants.

35.     Defendant continues to charge both up-front and monthly pet fees to tenants at the Properties.

36.     The pet fees are clearly not security deposits.   First, Defendant does not comply with the requirements of c. 186, § 15B with respect to its pet fees.  In addition, as non-refundable fees, the pet fees are, by definition, not security deposits.

37.     The pet fees are not first month's rent or last month's rent.  They are not refundable, they are not to be applied toward rent for the first or last month of the tenancy, they

---

[5] *See* Exhibit D, "Miscellaneous Charges."

are not used to offset rent for those periods, and they are not equivalent in amount to the monthly

rent.  In addition, Defendant did not, with respect to the pet fees, comply with the provisions of

c. 186 § 15B(2)(a) for holding the fees as last month's rent.

38.     The pet fees were not used to reimburse Defendant for the cost of a key and lock.

**E.     Specific Facts Relevant to the Plaintiffs**

39.     The Perrys lived at Equity Longview from approximately December 23, 2011

through approximately the end of June, 2012

40.     In or around mid-December, 2011, the Perrys paid a non-refundable application

fee of $100 as a condition of their lease application.  In or about late-December 2011, the Perrys

paid a $350 Amenity Fee, reduced to $99.00, as a condition of their tenancy.  They also paid a

monthly pet fee in the sum of $30 per month during their tenancy at Equity Longview Place.

41.     The Fees paid by the Perrys were all non-refundable fees.  None of the Fees were

presented to the Perrys as optional, but were instead presented as conditions of their tenancy.

42.     None of these Fees paid by the Perrys were  security deposits, nor were they

deposits for first or last month's rent, nor were they charges for the purchase and installation cost

for a key and lock.

43.     The Perrys have never received a refund of the any of these Fees or any portion of

any of them from Defendant.

44.     Miller lived at 10 Emerson Place, Apartment 18B in Boston from  approximately

May 1, 2010 through approximately July 7, 2012

45.     On or about April 14, 2010, Miller paid a non-refundable application fee of $50 as a condition of her lease application.  On or about May 1, 2010, Miller paid a $500 Amenity Fee as a condition of her tenancy.

46.     The Fees paid by Miller were one-time, non-refundable fees.  These Fees were not presented to Miller as optional, but were instead presented as conditions of her tenancy.  *See* April 18, 2010 email from Melissa Reis to Cheryl Miller (concerning the Amenity Fee), a copy of which is annexed hereto as Exhibit E.

47.     The  Fees paid by Miller were not security deposits, nor were they  deposits for first or last month's rent, nor were they  charges for the purchase and installation cost for a key and lock.

48.     Miller has never received a refund of either of these Fees or any portion of either of them from Defendant.

## V.  CLASS ACTION ALLEGATIONS

49.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All current and former tenants at the Properties who from May 1, 2008 through the date of judgment paid any Fees (the "Class").

Excluded from the Class are Defendant and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.  Plaintiffs reserve the right to modify or amend the Class definition, as appropriate.

50.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

51.     Numerosity – Fed. R. Civ. P. 23(a)(1).   The members of the Class are so numerous that individual joinder of all Class members is impracticable.   Plaintiffs are informed and believe that there are at least hundreds, if not thousands of Class members, since there are more than 6,000 rental units in the Properties. The precise number of Class members and their addresses is unknown to Plaintiffs, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

52.     Commonality and Predominance – Fed. R. Civ. P. 23(a)(2) and 23(b)(3).   This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. All Class members were subject to the same terms and conditions imposed by Defendant and all paid non-refundable Fees, though the amount of the Fees may have varied among the Class members.   Furthermore, common questions of law and fact, include, but are not limited to:

a.     Whether Defendant has been unjustly enriched as a result of the conduct complained of herein;

b.     Whether Defendant's Fees, violate Massachusetts law;

c.     Whether Defendant's conduct as alleged herein constitutes unfair or deceptive acts or practices in violation of G.L. c. 93A, § 2 and the regulations promulgated thereunder;

d.     Whether Defendant's violation of c. 93A, § 2 was willful and knowing;

e.     Whether Plaintiffs and the other members of the Class are entitled to damages and

if so, in what amount;

f.      Whether Plaintiffs and the other members of the Class are entitled to restitution; and

g.      Whether Plaintiffs and the other members of the Class are entitled to injunctive or declaratory relief.

53.     Typicality – Fed. R. Civ. P. 23(a)(3).  Plaintiffs' claims are typical of the claims of the other members of the Class because, among other things, all Class members were comparably injured through the uniform misconduct described herein, and all Class members have the same claim, *i.e.,* that Defendant's charging and collection of Fees, violates the Massachusetts Security Deposit Law.

54.     Adequacy of Representation – Fed. R. Civ. P. 23(a)(4).  Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; they have retained counsel competent and experienced in class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

55.     Superiority – Fed. R. Civ. P. 23(b)(3).  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct.  Even if the Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court

system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

56.     Declaratory and Injunctive Relief – Fed. R. Civ. P. 23(b)(2).  Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Class as a whole.

## VI.     CLAIMS FOR RELIEF

### COUNT I

### Violations of G. L. c. 186 § 15B

57.     Plaintiffs reallege and incorporate the allegations in the preceding paragraphs as if set forth at length here.

58.     Defendant's charging and collection of Fees violates the Massachusetts Security Deposit Law.

59.     Defendant's Fees are not among the enumerated categories of charges that lessors of real property can require tenants or prospective tenants to pay at or prior to the commencement of their tenancy:

a)      the Fees are not security deposits;

b)      the Fees are not deposits for first month's rent or last month's rent; and

c)      the Fees are not charges or reimbursements for the purchase and installation of a key and lock.

## COUNT II

### Violations of G. L. c. 93A § 2

60.     Plaintiffs reallege and incorporate the allegations in the preceding paragraphs as if set forth at length here.

61.     By engaging in the conduct complained of, ERM engaged in and continues to engage in unfair and deceptive acts and practices, in violation of G.L. c. 93A, § 2, and regulations promulgated thereunder.

62.     ERM's unfair and deceptive practices include, without limitation, the charging and collecting of Fees  in violation of G. L. c. 186 § 15B, which is an unambiguous statute.

63.     ERM performed the actions described herein willfully and knowingly, or with reckless disregard of applicable law, all within the meaning of G.L. c. 93A § 9.

64.     On February 23, 2012, the Perrys made a written demand for relief on behalf of the putative class with respect to the Amenity Fee, and on May 8, 2012, Miller also made such a demand.  On August 24, 2012, the Perrys and Miller made a joint written demand for relief with respect to the application fee and the pet fees.  ERM declined to tender a reasonable settlement offer in response to these demands.

## COUNT III

### Unjust Enrichment

65.     Plaintiffs reallege and incorporate the allegations in the preceding paragraphs as if set forth at length here.

66.     Plaintiffs and the other Class members conferred a benefit upon Defendant, in the form of the unlawful Fees they paid to Defendant as a condition of their tenancy.

67.     Defendant had an appreciation or knowledge of the unlawful Fees paid by Plaintiffs and the other members of the Class.

14

68.     Defendant's acceptance or retention of these benefits is inequitable under the circumstances as outlined above.

## COUNT IV

### Declaratory Judgment

69.     Plaintiffs reallege and incorporate the allegations in the preceding paragraphs as if set forth at length here.

70.     An actual controversy has arisen regarding ERM's compliance with G. L. c. 186 §15B.

71.     Pursuant to G.L. c. 231A, § 1, Plaintiffs and the Class members seek a declaration that ERM's conduct violates the Massachusetts Security Deposit Law and violates c. 93A, as alleged herein.

## COUNT V

### Injunctive Relief

72.     Plaintiffs reallege and incorporate the allegations in the preceding paragraphs as if set forth at length here.

73.     Plaintiffs seek injunctive relief compelling ERM to cease and desist from charging Fees to its Massachusetts tenants.

## VII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully request that the Court order the following relief:

A.     An Order certifying the Class as requested herein;

B.     An Order awarding damages to Plaintiffs and the other members of the Class, including compensatory and multiple or exemplary damages;

15

C.      An Order awarding restitution to Plaintiffs and the other members of the Class;

D.      An Order awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing its unlawful practice of charging  Fees in violation of the Massachusetts Security Deposit Law;

E.      An Order awarding attorneys' fees and costs to Plaintiffs; and

F.      Such other and further relief as may be just and proper.

## VIII.   <u>JURY DEMAND</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

Dated:  February 19, 2013                          Respectfully submitted,

                                                   **PASTOR LAW OFFICE, LLP**

                                                   <u>/s/ David Pastor                  </u>
                                                   DAVID PASTOR
                                                   (BBO # 391000)
                                                   63 Atlantic Avenue, 3d Floor
                                                   Boston, Massachusetts  02110
                                                   Telephone:  617-742-9700
                                                   Facsimile:  617-742-9701
                                                   dpastor@pastorlawoffice.com

                                                   **FOGELMAN & FOGELMAN LLC**

                                                   <u>/s/ Matthew J. Fogelman           </u>
                                                   MATTHEW J. FOGELMAN
                                                   (BBO # 653916)
                                                   100 Wells Avenue
                                                   Newton, MA 02459
                                                   Telephone:  617-559-1530
                                                   Facsimile:   617-505-1540
                                                   mjf@fogelmanlawfirm.com

                                                   *Plaintiffs' Interim Class Counsel*

**LEONARD LAW OFFIICE LLP**

/s/ Preston W. Leonard_____
PRESTON W. LEONARD
(BBO # 680991)
139 Charles Street, Suite A121
Boston, MA 02114
Telephone:     (617) 595-3640
pleonard@theleonardlawoffice.com

*Plaintiffs' Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2013, I electronically filed the foregoing *Consolidated and Amended Class Action Complaint* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

/s/ David Pastor_____
David Pastor