**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BRIAN PERRY, KIM PERRY, and CHERYL MILLER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> EQUITY RESIDENTIAL MANAGEMENT, L.L.C., <br><br> Defendant. | Civil Action No. 1:12-cv-10779-RWZ <br><br> [Consolidated Action] |

## ANSWER AND AFFIRMATIVE DEFENSES TO CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

Defendant, Equity Residential Management, L.L.C. ("ERM"), answers the Consolidated And Amended Class Action Complaint filed herein on February 19, 2013 ("Complaint") as follows:

### I.  SUMMARY OF THE CASE

1. Plaintiffs bring this action for redress of ERM's unlawful practice of charging required, non-refundable fees, called "amenity fees," "move-in fees," or "community fees" (referred to collectively as "Amenity Fees") and application fees and pet fees to tenants at its Massachusetts rental properties. The Amenity Fees, application fees and pet fees are sometimes collectively referred to herein as the "Fees." The Fees, charged to Plaintiffs and other tenants at ERM's various Massachusetts properties (the "Properties") violate G.L. c. 186, § 15B, the Massachusetts Security Deposit Law. Plaintiffs, on behalf of themselves and the Class, seek refund or reimbursement to ERM's current and former Massachusetts tenants of the Fees they paid during the Class Period and seek an order, in the form of injunctive relief, directing ERM to cease its practice of charging these unlawful Fees. Plaintiffs bring this action as a class action on behalf of themselves and a class comprised of all current and former tenants at the Properties who paid any Fees, during the period from May 1, 2008 through the date of judgment (the "Class Period").

**ANSWER:**   This paragraph simply attempts to characterize and draw legal conclusions about the Complaint without making fact allegations. Accordingly, no answer is required. To the extent that an answer is deemed necessary, ERM denies the allegations.

## II.  THE PARTIES

2. Plaintiffs Brian Perry and Kim Perry ("the Perrys") are individuals residing at 951 Huntington Drive, Elk Grove Village, Illinois. During the period from approximately December 23, 2011 through approximately the end of June, 2012, the Perrys were tenants at Equity Longview Place, 70 Hope Avenue, Waltham, Massachusetts.

**ANSWER:**   Defendant admits the Perrys were residents in Unit 207 of Longview Place from their move-in date of December 23, 2011 until their move-out date in June, 2012. All other allegations are denied.

3. Plaintiff Cheryl Miller ("Miller") is an individual residing at 14 Pinckney Street, Unit # 301, Boston, Massachusetts. During the period from approximately May 1, 2010 through approximately July 7, 2012, Miller was a tenant at 10 Emerson Place, Apartment 18B, Boston, Massachusetts.

**ANSWER:**   Defendant admits that Miller was a resident in Unit 18B at Emerson Place from May 1, 2010 until her move-out date in May, 2012. All other allegations are denied.

4. Defendant ERM is a Delaware limited liability company, with a principal place of business in Chicago, Illinois and a regional office in Wellesley, Massachusetts. ERM operates, manages and leases approximately 31 residential apartment complexes in Massachusetts. ERM is identified as the lessor on Plaintiffs' leases and is and was the lessor on leases for more than 6,000 residential rental units in Massachusetts. See Exhibit A.

**ANSWER:**   Defendant admits that it is a Delaware limited liability company with its principal office in Chicago, Illinois. Defendant admits that it manages numerous multi-family apartment properties in Massachusetts. Defendant admits that it is an authorized agent of the property owners for executing leases for apartments on their behalf. Defendant admits that all leases identify it as an authorized representative of the legal owner of the property. All other allegations are denied.

### III.  JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, Plaintiffs and Defendant are residents of different states, and the state of residence of most Class members (Massachusetts) is different from the state of residence of Defendant (Illinois or Delaware).

**ANSWER:**   Defendant admits to jurisdiction and admits citizenship is different, but denies all other allegations.

6. This Court has personal jurisdiction over Defendant because it transacts and has transacted business in Massachusetts by leasing and managing residential rental units in Massachusetts, and because the acts or conduct that are the subject matter of this action arose from Defendant's transaction of business in Massachusetts.

**ANSWER:**   Defendant admits that it transacts business in Massachusetts but denies all other allegations.

7. Venue is proper in this Court because Plaintiffs reside in this District, ERM leases and/or manages residential rental units in this District, and the acts giving rise to the causes of action asserted herein occurred in this District.

**ANSWER:**   Defendant admits only that venue is proper.

### IV.  FACTUAL ALLEGATIONS

8. The Massachusetts Security Deposit Law, c. 186 §15B, unambiguously states: "(b) At or prior to the commencement of any tenancy, no lessor may require a tenant or prospective tenant to pay any amount in excess of the following:

> (i)   rent for the first full month of occupancy; and,
>
> (ii)  rent for the last full month of occupancy calculated at the same rate as the first month; and,
>
> (iii) a security deposit equal to the first month's rent provided that such security deposit is deposited as required by subsection (3) and that the tenant is given the statement of condition as required by subsection (2); and,
>
> (iv)  the purchase and installation cost for a key and lock."

**ANSWER:**   Defendant denies that this paragraph accurately characterizes the statute.

3

9. A lessor cannot require tenants to pay any amounts of money for any items or services beyond the specific, above-enumerated four items.

**ANSWER:** Denied.

10. The Attorney General has similarly promulgated administrative regulations which expressly prohibit a lessor from charging any amounts in addition to these four permissible charges. See 940 C.M.R. §3.17(4)(a). Any additional payments required by a lessor for any other items or services are considered an unlawful and/or deceptive business practice proscribed by G.L., c. 93A, § 2. See id.

**ANSWER:** Denied.

11. The Attorney General's regulations also define "owner" to include persons or entities who manage the property on behalf of the owner and who control the owner of the property. See 940 C.M.R. § 3.01 (defining "owner" to include "one who manages, controls, and/or customarily accepts rent on behalf of the owner.").

**ANSWER:** Defendant admits only that the cited regulations speak for themselves when fully quoted.

12. ERM is identified as the "Lessor" on Plaintiffs' leases and is the lessor for the leases on all rental units at the Properties. ERM signs the leases as agent for the owner, ERP Operating Limited Partnership (an affiliate of ERM).

**ANSWER:** ERM admits that it signed Plaintiffs' leases as agent for the owners of the properties where Plaintiffs leased apartments and that it typically does so on other units. All other allegations are denied.

13. At or prior to the commencement of each tenancy at the Properties, ERM charges each tenant a one-time, non-refundable fee, called at various times an "amenity fee, or a "move-in fee.

**ANSWER:** Defendant admits only that the Perrys paid a $99.00 move-in fee and that Miller paid a $500.00 move-in fee. All other allegations are denied.

14. More recently, ERM has changed name of the Amenity Fee to something called a "community fee." As is the case with the prior version of the Amenity Fee, the "community fee" is mandatory and a condition of the tenancy.

**ANSWER:**   Defendant admits that it discontinued collection of a move-in fee in or about March, 2012.  Defendant admits that in or about April, 2012 it introduced a community fee.  Defendant denies all other allegations.

15. During most of the Class Period, including the time that Plaintiffs were tenants at the Properties, ERM charged each new tenant an Amenity Fee (called either an "amenity fee" or a "move in fee") at or about the time of the execution of the lease.  More recently, on information and belief, ERM, in an effort to evade the restrictions of the Security Deposit Law, began charging tenants, at the commencement of their tenancy, a one-time, non-refundable fee called a "community fee," but does not collect that fee until after the first month of the tenancy.  According to one current tenant at Emerson Place, ERM is charging a "community fee" of $500, disclosed and charged up front, but ERM defers collection of the fee until after the first month of the tenancy.  This community fee is a blatant, but unsuccessful attempt to avoid the statutory restrictions.  Plain and simple, the community fee is the same as the "amenity fee" or "move in fee, with the same legal effects and consequences.  Accordingly, the defined term, "Amenity Fee," as used herein, includes the "community fee."

**ANSWER:**   Defendant admits only that it collected move-in fees from Plaintiffs and that move-in fees were most often paid on or before the move-in date of the resident paying same.  Defendant admits that a community fee is disclosed at the time of leasing but not paid by the resident until after the first month of his/her tenancy.  Defendant also admits that neither the Perrys nor Miller paid a community fee.  All other allegations are denied.  Plaintiffs' attempt to treat the community fee as an Amenity Fee is rejected.

16. The Amenity Fee is charged at or prior to the time of execution of the lease, though in certain cases, as noted above, it may be collected at a later time.

**ANSWER:**   Defendant admits only that a move-in fee was disclosed in the lease and typically payable on or prior to the move-in date.  Defendant admits that a community fee is disclosed in the lease and not payable until after one month of tenancy.  All other allegations are denied.

17. The Amenity Fee is a one-time fee in that it is paid once during a particular tenant's tenancy, even if that tenant renews his or her tenancy for multiple annual terms.

5

**ANSWER:** Defendant admits only that a move-in fee is only paid once by a resident who renews and that a community fee is only paid once by a tenant who renews. All other allegations are denied.

18. The Amenity Fee is non-refundable.

**ANSWER:** Defendant admits that a move-in fee is non-refundable after paid and that a community fee is non-refundable after paid. All other allegations are denied.

19. The Amenity Fee is not optional — it is imposed upon tenants at the Properties as condition of their tenancy.

**ANSWER:** Defendant admits that a resident who contracts to pay a move-in fee or a community fee is expected to pay it. Defendant denies that all residents pay such a fee. All other allegations are denied.

20. Defendant continues to charge Amenity Fees to tenants at the Properties, though a noted above, it is now labeled as a "community fee," and collection of the fee is deferred.

**ANSWER:** Defendant admits only that some residents pay a community fee, but denies that Plaintiffs did. Defendant admits that some residents pay a move-in fee, including Plaintiffs. All other allegations are denied.

21. ERM is responsible for the decision to charge tenants in Massachusetts a mandatory Amenity Fee.

**ANSWER:** Admitted.

22. As noted above, the Amenity Fee is a one-time, non-refundable fee, and was, up until the recent switch to the later-collected community fee, paid at or about the time of the execution of the lease, and was listed in ERM's Residential Lease Term Sheet as a non-refundable fee in the section entitled, "Total Other Fees and Charges." See Defendant's Residential Lease Term Sheet for Miller's lease term commencing 5/1/2010, a copy of which is annexed hereto as Exhibit B.

**ANSWER:** Defendant admits that Exhibit B is a copy of Miller's Residential Lease Term Sheet for Unit 18B and the lease term of May 1, 2010 to April 30, 2011. Defendant admits

6

that the $500.00 nonrefundable move-in fee is shown on Exhibit B in the section entitled "Total Other Fees And Charges." All other allegations are denied.

23. The Amenity Fee is clearly not a security deposit. First, Defendant does not comply with the requirements of c. 186, § 15B with respect to the Amenity Fee. Second, as a non-refundable fee, the Amenity Fee is, by definition, not a security deposit. Finally, Defendant's Lease Terms and Conditions specifically provide that the Amenity Fee is not a security deposit:

> ONE-TIME FEES: If you have paid other fees and charges as set forth in the Total Other Fees and Charges section of the Term Sheet, you acknowledge and understand that such other fees and charges are not refundable, are not considered to be a security deposit or part of the Total Deposits, and will not be applied as a credit toward any amounts owing by you at the time you move out.

**ANSWER:** Defendant admits that a move-in fee was not a security deposit. Defendant admits that a community fee is not a security deposit. Defendant admits that Exhibit C is a copy of the "Residential Lease – Terms and Conditions (Massachusetts)" referenced on Exhibit B. All other allegations are denied.

24. The Amenity Fee is not first month's rent or last month's rent. It is not refundable, it is not to be applied toward rent for the first or last month of the tenancy, it is not used to offset rent for those periods, and it is not equivalent in amount to the monthly rent. In addition, Defendant did not, with respect to the Amenity Fee, comply with the provisions of c. 186 § 15B(2)(a) for holding the fee as last month's rent.

**ANSWER:** Defendant admits that neither the move-in fee nor the community fee is applied to rent or considered rent. All other allegations are denied.

25. The Amenity Fee was not used to reimburse Defendant for the cost of a key and lock.

**ANSWER:** Defendant admits that a move-in fee is not used to reimburse for the cost of a key and lock.

25. [sec] ERM charges each prospective tenant who applies for a tenancy at one of the Properties a non-refundable application fee of $50 per person. In other words, if two persons are seeking to lease an apartment as co-tenants, ERM charges each prospective co-tenant a separate $50 application fee.

7

**ANSWER:**   Defendant denies that all prospective residents pay an application fee. Defendant admits that when an application fee is to be paid each person signing the lease and assuming liability under the lease is asked to complete an application. All other allegations are denied.

26.   The application fee is non-refundable.

**ANSWER:**   Defendant admits that the application fee is non-refundable once an application is processed.

27.   The application fee is not optional — it is imposed upon prospective tenants at the Properties as a condition of their lease application.

**ANSWER:**   Denied. Defendant has the option of collecting an application fee.

28.   Defendant continues to charge application fees to prospective tenants at the Properties.

**ANSWER:**   Defendant admits that most prospective residents pay an application fee when they apply to rent a unit.

29.   The application fee is clearly not a security deposit. First, Defendant does not comply with the requirements of c. 186, § 15B with respect to the application fee. In addition, as a non-refundable fee, the application fee is, by definition, not a security deposit.

**ANSWER:**   Defendant admits that an application fee is not a security deposit. All other allegations are denied.

30.   The application fee is not first month's rent or last month's rent. It is not refundable, it is not to be applied toward rent for the first or last month of the tenancy, it is not used to offset rent for those periods, and it is not equivalent in amount to the monthly rent. In addition, Defendant did not, with respect to the application fee, comply with the provisions of c. 186 § 15B(2)(a) for holding the fee as last month's rent.

**ANSWER:**   Defendant admits that an application fee is not applied toward rent for the first or last month of the tenancy and that it is not refundable. All other allegations are denied.

31.   The application fee was not used to reimburse Defendant for the cost of a key and lock.

**ANSWER:**   Admitted.

32.   ERM charges its Massachusetts tenants pet fees, consisting of a $250 up front, one-time fee and a monthly fee of $30.

**ANSWER:**   Denied.

33.   The pet fees are non-refundable.

**ANSWER:**   Defendant admits that the additional monthly rent collected from pet owners pursuant to their leases is non-refundable. All other allegations are denied.

34.   The pet fees are required for all pet-owning tenants and are a condition of the tenancy for those tenants.

**ANSWER:**   Defendant admits that some pet-owning residents pay additional monthly rent to have a pet reside in their unit. All other allegations are denied.

35.   Defendant continues to charge both up-front and monthly pet fees to tenants at the Properties.

**ANSWER:**   Defendant admits only that it charges additional monthly rent to pet owners as outlined in their leases. All other allegations are denied.

36.   The pet fees are clearly not security deposits. First, Defendant does not comply with the requirements of c. 186, § 15B with respect to its pet fees. In addition, as non-refundable fees, the pet fees are, by definition, not security deposits.

**ANSWER:**   Defendant admits that additional rent for pets is not a security deposit. All other allegations are denied.

37.   The pet fees are not first month's rent or last month's rent. They are not refundable, they are not to be applied toward rent for the first or last month of the tenancy, they are not used to offset rent for those periods, and they are not equivalent in amount to the monthly rent. In addition, Defendant did not, with respect to the pet fees, comply with the provisions of c. 186 § 15B(2)(a) for holding the fees as last month's rent.

**ANSWER:**   Defendant admits that monthly pet rent is a part of the first month's rent and the last month's rent as well as every other monthly rent payment. Defendant admits that pet rent is non-refundable. All other allegations or inconsistent allegations are denied.

9

     38.     The pet fees were not used to reimburse Defendant for the cost of a key and lock.

     **ANSWER:**     Admitted.

     39.     The Perrys lived at Equity Longview from approximately December 23, 2011 through approximately the end of June, 2012

     **ANSWER:**     Defendant admits that the Perrys resided in Unit 207-5 at Longview Place for the time period alleged.

     40.     In or around mid-December, 2011, the Perrys paid a non-refundable application fee of $100 as a condition of their lease application. In or about late-December 2011, the Perrys paid a $350 Amenity Fee, reduced to $99.00, as a condition of their tenancy. They also paid a monthly pet fee in the sum of $30 per month during their tenancy at Equity Longview Place.

     **ANSWER:**     Defendant admits that Brian Perry paid a $50.00 application fee on December 13, 2011 and Kim Perry paid a $50.00 application fee on December 13, 2011. Defendant admits that the Perrys paid a non-refundable move-in fee of $99.00 on December 13, 2011. Defendant also admits that the Perrys agreed to pay an additional $30.00 per month in rent in order to have cats and that this amount was included in the pro-rated December rent paid on December 23, 2011 and each monthly rent payment thereafter. All other allegations are denied.

     41.     The Fees paid by the Perrys were all non-refundable fees. None of the Fees were presented to the Perrys as optional, but were instead presented as conditions of their tenancy.

     **ANSWER:**     The total of $100.00 in application fees, the $99.00 move-in fee, and the $30.00/month additional rent were all non-refundable once the Perrys' tenancy commenced as per the lease. The Perrys, like any prospective resident, always had the option of leasing an apartment from someone other than defendant and thereby avoiding any charges or rent sought by defendant. All other allegations are denied.

     42.     None of these Fees paid by the Perrys were security deposits, nor were they deposits for first or last month's rent, nor were they charges for the purchase and installation cost for a key and lock.

**ANSWER:** Defendant admits that the paid amounts described in answer to paragraph 41 were not security deposits, deposits for first or last month's rent, or the installation cost for a key and lock. Defendant denies all other allegations.

43. The Perrys have never received a refund of the any of these Fees or any portion of any of them from Defendant.

**ANSWER:** Admitted.

44. Miller lived at 10 Emerson Place, Apartment 18B in Boston from approximately May 1, 2010 through approximately July 7, 2012

**ANSWER:** Admitted.

45. On or about April 14, 2010, Miller paid a non-refundable application fee of $50 as a condition of her lease application. On or about May 1, 2010, Miller paid a $500 Amenity Fee as a condition of her tenancy.

**ANSWER:** Defendant admits that Miller paid a $50.00 application fee on April 14, 2010. Defendant admits that Miller paid $300.00 on April 19, 2010 and $200.00 on April 27, 2010 as a move-in fee. All other allegations are denied.

46. The Fees paid by Miller were one-time, non-refundable fees. These Fees were not presented to Miller as optional, but were instead presented as conditions of her tenancy. See April 18, 2010 email from Melissa Reis to Cheryl Miller (concerning the Amenity Fee), a copy of which is annexed hereto as Exhibit E.

**ANSWER:** Defendant admits that the fees paid by Miller were one-time and non-refundable when her tenancy commenced on May 1, 2010. Defendant admits that Exhibit E incorrectly describes the $500.00 as an "amenity fee" when the Lease signed by Miller (Exhibit B) correctly describes this sum as a nonrefundable "move-in fee." All other allegations are denied.

47. The Fees paid by Miller were not security deposits, nor were they deposits for first or last month's rent, nor were they charges for the purchase and installation cost for a key and lock.

**ANSWER:** Admitted.

48. Miller has never received a refund of either of these Fees or any portion of either of them from Defendant.

**ANSWER:** Admitted.

### V. CLASS ACTION ALLEGATIONS

49. Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All current and former tenants at the Properties who from May 1, 2008 through the date of judgment paid any Fees (the "Class").

Excluded from the Class are Defendant and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof. Plaintiffs reserve the right to modify or amend the Class definition, as appropriate.

**ANSWER:** Denied.

50. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

**ANSWER:** Denied.

51. Numerosity — Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that individual joinder of all Class members is impracticable. Plaintiffs are informed and believe that there are at least hundreds, if not thousands of Class members, since there are more than 6,000 rental units in the Properties. The precise number of Class members and their addresses is unknown to Plaintiffs, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

**ANSWER:** Denied.

52. Commonality and Predominance — Fed. R. Civ. P. 23(a)(2) and 23(b)(3). This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. All Class members were subject to the same terms and conditions imposed by Defendant and all paid non-refundable Fees, though the amount of the Fees may have varied among the Class members. Furthermore, common questions of law and fact, include, but are not limited to:

> a. Whether Defendant has been unjustly enriched as a result of the conduct complained of herein;

      b.      Whether Defendant's Fees, violate Massachusetts law;

      c.      Whether Defendant's conduct as alleged herein constitutes unfair or deceptive acts or practices in violation of G.L. c. 93A, § 2 and the regulations promulgated thereunder;

      d.      Whether Defendant's violation of c. 93A, § 2 was willful and knowing;

      e.      Whether Plaintiffs and the other members of the Class are entitled to damages and if so, in what amount;

      f.      Whether Plaintiffs and the other members of the Class are entitled to restitution; and

      g.      Whether Plaintiffs and the other members of the Class are entitled to injunctive or declaratory relief.

**ANSWER**:   Denied.

53.   Typicality — Fed. R. Civ. P. 23(a)(3).  Plaintiffs' claims are typical of the claims of the other members of the Class because, among other things, all Class members were comparably injured through the uniform misconduct described herein, and all Class members have the same claim, i.e., that Defendant's charging and collection of Fees, violates the Massachusetts Security Deposit Law.

**ANSWER**:   Denied.

54.   Adequacy of Representation — Fed. R. Civ. P. 23(a)(4).  Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; they have retained counsel competent and experienced in class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

**ANSWER**:   Denied.

55.   Superiority — Fed. R. Civ. P. 23(b)(3).  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct.  Even if the Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**ANSWER:**   Denied.

56.   Declaratory and Injunctive Relief — Fed. R. Civ. P. 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Class as a whole.

**ANSWER:**   Denied.

## VI.  CLAIMS FOR RELIEF

### COUNT I
### Violations of G. L. c. 186 § 15B

57.   Plaintiffs reallege and incorporate the allegations in the preceding paragraphs as if set forth at length here.

**ANSWER:**   Defendant incorporates by reference its answers to the preceding paragraphs.

58.   Defendant's charging and collection of Fees violates the Massachusetts Security Deposit Law.

**ANSWER:**   Denied.

59.   Defendant's Fees are not among the enumerated categories of charges that lessors of real property can require tenants or prospective tenants to pay at or prior to the commencement of their tenancy:

    a)   the Fees are not security deposits;

    b)   the Fees are not deposits for first month's rent or last month's rent; and

    c)   the Fees are not charges or reimbursements for the purchase and installation of a key and lock.

**ANSWER:**   Denied.

### COUNT II
### Violations of G. L. c. 93A § 2

60.   Plaintiffs reallege and incorporate the allegations in the preceding paragraphs as if set forth at length here.

**ANSWER:**   Defendant incorporates by reference its answers to the preceding paragraphs.

61.     By engaging in the conduct complained of, ERM engaged in and continues to engage in unfair and deceptive acts and practices, in violation of G.L. c. 93A, § 2, and regulations promulgated thereunder.

**ANSWER:**   Denied.

62.     ERM's unfair and deceptive practices include, without limitation, the charging and collecting of Fees in violation of G. L. c. 186 § 15B, which is an unambiguous statute.

**ANSWER:**   Denied.

63.     ERM performed the actions described herein willfully and knowingly, or with reckless disregard of applicable law, all within the meaning of G.L. c. 93A § 9.

**ANSWER:**   Denied.

64.     On February 23, 2012, the Perrys made a written demand for relief on behalf of the putative class with respect to the Amenity Fee, and on May 8, 2012, Miller also made such a demand. On August 24, 2012, the Perrys and Miller made a joint written demand for relief with respect to the application fee and the pet fees. ERM declined to tender a reasonable settlement offer in response to these demands.

**ANSWER:**   Defendant admits that Perrys (by their attorney) sent a letter dated February 23, 2012 demanding payment of $297.00 for a refund of a move-in fee. Defendant admits that it responded with a settlement offer on March 6, 2012. Defendant admits that Miller (by her attorney) sent a letter dated May 8, 2012 demanding payment of $500.00 for a refund of a move-in fee. Defendant admits that it responded with a settlement offer on May 25, 2012. Defendant admits that Perrys and Miller (by their attorneys) sent a letter dated August 24, 2012 demanding payment of $50.00 (Miller application fee) plus $100.00 (Perrys application fee) plus $30.00 per month (Perrys pet rent). Defendant admits that it responded to the August 24, 2012 letter on September 26, 2012 with a settlement offer for the Perrys and Miller. Defendant admits further that the Perrys filed their original Complaint against Defendant on May 1, 2012 and that Miller filed her original Complaint against Defendant on May 9, 2012. All other allegations are denied.

## COUNT III
### Unjust Enrichment

65. Plaintiffs reallege and incorporate the allegations in the preceding paragraphs as if set forth at length here.

**ANSWER:** Defendant incorporates by reference its answers to the preceding paragraphs.

66. Plaintiffs and the other Class members conferred a benefit upon Defendant, in the form of the unlawful Fees they paid to Defendant as a condition of their tenancy.

**ANSWER:** Denied.

67. Defendant had an appreciation or knowledge of the unlawful Fees paid by Plaintiffs and the other members of the Class.

**ANSWER:** Denied.

68. Defendant's acceptance or retention of these benefits is inequitable under the circumstances as outlined above.

**ANSWER:** Denied.

## COUNT IV
### Declaratory Judgment

69. Plaintiffs reallege and incorporate the allegations in the preceding paragraphs as if set forth at length here.

**ANSWER:** Defendant incorporates by reference its answers to the preceding paragraphs.

70. An actual controversy has arisen regarding ERM's compliance with G. L. c. 186 §15B.

**ANSWER:** Denied.

71. Pursuant to G.L. c. 231A, § 1, Plaintiffs and the Class members seek a declaration that ERM's conduct violates the Massachusetts Security Deposit Law and violates c. 93A, as alleged herein.

**ANSWER:** Denied.

## COUNT V
### Injunctive Relief

72. Plaintiffs reallege and incorporate the allegations in the preceding paragraphs as if set forth at length here.

**ANSWER:** Defendant incorporates by reference its answers to the preceding paragraphs.

73. Plaintiffs seek injunctive relief compelling ERM to cease and desist from charging Fees to its Massachusetts tenants.

**ANSWER:** Denied.

## VII.  REQUEST FOR RELIEF

WHEREFORE, Plaintiffs individually and on behalf of the other members of the Class proposed in this Complaint, respectively request that the Court order the following relief:

   A.  An Order certifying the Class as requested herein;

   B.  An Order awarding damages to Plaintiffs and the other members of the Class, including compensatory and multiple or exemplary damages;

   C.  An Order awarding resolution to Plaintiffs and the other members of the Class;

   D.  An Order awarding declaratory and injunctive relief as permitted by law or equity, including:  enjoining Defendant from continuing its unlawful practice of charging Fees in violation of the Massachusetts Security Deposit Law;

   E.  An Order awarding attorneys' fees and costs to Plaintiffs; and

   F.  Such other and further relief as may be just and proper.

**ANSWER:** Defendant denies that Plaintiffs are entitled to any of the relief requested and prays for the entry of judgment in its favor and against Plaintiffs together with an award of fees and costs.

**VIII.  JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

**ANSWER:**   Defendant denies that Plaintiffs have a right to trial by jury and moves to strike the demand for same.

**AFFIRMATIVE DEFENSES**

Defendant, Equity Residential Management, LLC ("ERM"), asserts the following matters affirmatively in defense to the claims made in the Consolidated And Amended Class Action Complaint filed on February 19, 2013:

1. Statute of Limitations:  All or part of Plaintiffs' claims are barred by the applicable statute of limitations.

2. Laches:  All or part of Plaintiffs' claims are barred by the doctrine of laches.

3. Lack of Standing:  Plaintiffs are barred from pursuing claims for refunds of charges or fees which they did not pay or in excess of amounts actually paid.

4. Estoppel:  Plaintiffs were fully informed regarding the nature, amount, and purpose for all fees prior to making payment thereof and had sufficient time to consider such fees prior to executing leases describing such fees.  Accordingly, the fees were paid voluntarily and without dispute.  Plaintiffs' claims are barred by application of the voluntary payment doctrine.

5. Novation:  Plaintiffs are prohibited from asserting claims that are not based upon their most recent lease or amounts paid under said lease.

6. Failure To State a Claim:  Plaintiffs have failed to properly plead the required elements of their claims or for entitlement to the relief requested.

7. Setoff:  To the extent that Defendant is deemed to owe any amount to Plaintiffs as claimed, said amount must be reduced by any and all amounts owed by Plaintiffs to Defendant.

Respectfully submitted,

EQUITY RESIDENTIAL MANAGEMENT, L.L.C.,

By its attorneys,

/s/ Thomas H. Wintner
Craig M. White (*pro hac vice*)
EDWARDS WILDMAN PALMER LLP
225 West Wacker Drive
Chicago, IL 60606
(312) 201-2000 (telephone)
(312) 201-2555 (fax)
cwhite@edwardswildman.com

Thomas H. Wintner (BBO # 667329)
EDWARDS WILDMAN PALMER LLP
111 Huntington Avenue
Boston, Massachusetts  02199
(617) 239-0100 (telephone)
(617) 227-4420 (fax)
twintner@edwardswildman.com

Dated:  April 1, 2013

**CERTIFICATE OF SERVICE**

I certify that the above document was filed electronically using the CM/ECF system on April 1, 2013, and thereby delivered by electronic means to all counsel of record.

/s/ Thomas H. Wintner
Thomas H. Wintner