# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRIAN PERRY, KIM PERRY, and CHERYL MILLER, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Civil Action No. 1:12-cv-10779-RWZ |
| v. | [Consolidated Action] |
| EQUITY RESIDENTIAL MANAGEMENT, L.L.C., | |
| Defendant. | |

## OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Defendant Equity Residential Management, L.L.C. ("ERM") hereby opposes plaintiffs' Motion for Class Certification (Doc No. 28), and states as follows:

## I. INTRODUCTION

Plaintiffs' Motion should be denied because, contrary to plaintiffs' contentions, lumping together current and former tenants from 31 different apartment communities, in over 6500 apartments, to pursue five different "Fees" for refund, is not consistent with each individual's right to control his or her claim under G.L. c. 186, § 15B(1)(b) and G.L. c. 93A, § 2. Accordingly, a class action is not superior to other available methods for fairly and efficiently adjudicating these claims within the meaning of Rule 23(b)(3). Claims by individuals who paid two or three of the challenged fees can easily exceed $1,000. Furthermore, the fee-shifting provisions authorized by Chapter 93A are sufficient to attract lawyers to represent individual class members on their § 15B(1)(b) claims – indeed, that is precisely what plaintiffs' counsel have done in this case. There is no evidence supporting plaintiffs' claim that the cost of bringing an individual action compels "aggregate litigation" of the five distinct fees at issue here.

## II. SUMMARY OF RELEVANT FACTS[1]

Plaintiffs purport to represent a class of individuals in Massachusetts who, from May 1, 2008 through the present, paid one or more of five non-refundable "Fees" at ERM-managed properties. *See* Consolidated and Amended Class Action Complaint ("Amended Complaint"), Doc No. 41, ¶¶ 1, 49; *see also* Plaintiffs' Memorandum in Support of Motion for Class Certification ("Mem.") at 4. The five contested non-refundable fees are: (A) an "application fee"; (B) a "move-in fee"; (C) an "up-front pet fee"; (D) a "monthly pet fee"; and (E) a "community fee." Amended Complaint ¶ 1; *see also* SOF ¶¶ 1-43. Plaintiffs contend that these fees violate both G.L. c. 186, § 15B and G.L. c. 93A, § 2.[2]

ERM's non-refundable **application fee** covers the costs of processing a rental application to determine whether an applicant is eligible to receive a lease offer. [SOF ¶¶ 3-6.] The costs of processing applications are for criminal background checks, employment history checks, rental history checks, credit checks, and the like. [SOF ¶ 7.] Miller paid a $50.00 application fee on April 14, 2010, prior to receiving a lease offer from ERM and approximately two weeks prior to her move-in date. [SOF ¶¶ 53,60.] Brian and Kim Perry each paid a $50.00 application fee on December 13, 2011, also prior to receiving a lease offer and prior to their move-in date of December 23, 2011. [SOF ¶¶ 91,97.] However, neither Miller nor the Perrys challenged ERM's application fee until they filed their Amended Complaint *years later*, on February 19, 2013. [SOF ¶¶ 117-119.] ERM stopped collecting application fees in Massachusetts on September 27, 2013. [SOF ¶ 10.]

---

[1] In addition to the facts summarized herein, ERM specifically refers to and incorporates its Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment ("SOF"), filed on December 12, 2013 (Doc No. 58).

[2] For a detailed discussion of why these five non-refundable fees *do not* violate the Security Deposit Statute, and are contrary to the Statute's intended purpose, see ERM's Motion for Summary Judgment and Memorandum in Support, filed on December 12, 2013 (Doc Nos. 56-57).

ERM's non-refundable **move-in fee** was charged to new residents and was used to offset the costs that ERM typically incurred in getting an apartment ready for move-in, such as marketing, lease preparation, communicating with prospective tenants, and decorating. [SOF ¶¶ 11-12.] The amount of the move-in fee varied by property, based on market conditions. [SOF ¶ 16.] Miller paid a $500.00 non-refundable move-in fee for her apartment on April 27, 2010. [SOF ¶ 56.] The Perrys paid a $99.00 non-refundable move-in fee for their apartment on December 23, 2011. [SOF ¶ 95.] In February 2012, ERM stopped collecting move-in fees in Massachusetts. [SOF ¶ 17.] The Perrys and Miller challenged their move-in fees via their initial complaints filed on May 1, 2012 and May 8, 2012, respectively. [SOF ¶¶ 108,111.]

ERM's non-refundable **up-front pet fee** was charged for the privilege of keeping a pet at the property, and was intended to offset costs resulting from having pets in an apartment community. [SOF ¶¶ 19-23.] The amount of the up-front pet fee varied from property to property, depending on market conditions and the type and number of pets owned by the tenant. [SOF ¶¶ 24.] In February 2012, ERM stopped collecting up-front pet fees in Massachusetts. [SOF ¶ 27.] Neither Miller nor the Perrys were ever charged, or ever paid, an up-front pet fee, nor did they seek to challenge up-front pet fees until they filed their Amended Complaint on February 19, 2013. [SOF ¶¶ 61,100,120.] In fact, plaintiffs never included a demand for up-front pet fees in any of their Chapter 93A demand letters to ERM. [SOF ¶ 116.]

ERM's non-refundable **monthly pet fee** – known more properly as **"pet rent"** – is also charged to tenants for the privilege of keeping a pet at the property, and offsets the costs of having pets in the community. [SOF ¶¶ 28-29.] The amount of pet rent varies from property to property, based on market conditions and the type and number of pets owned by the tenant. [SOF ¶ 30.] Miller never owned any pets during her time at Emerson Place, and thus never paid

any pet rent to ERM. [SOF ¶ 61.] The Perrys paid $30.00 per month for their pet cat, a charge which was disclosed in their lease along with various other monthly recurring charges. [SOF ¶ 92.] Neither Miller nor the Perrys challenged ERM's monthly pet rent until they filed their Amended Complaint on February 19, 2013. [SOF ¶ 119.]

ERM's non-refundable **community fee** has been charged to Massachusetts tenants since May 2012. [SOF ¶ 36.] The community fee is intended to offset some of the costs associated with maintaining the entire property, such as common areas, landscaping, fitness center, pool, and so on. [SOF ¶ 37.] The community fee is not charged and collected until the beginning of the second full month of occupancy because the community fee is tied to ERM's 30-day "Total Satisfaction Guarantee." [SOF ¶¶ 39-41.] The amount of the community fee varies from property to property, based on market conditions. [SOF ¶ 42.] Plaintiffs were never charged, and never paid, a community fee, nor did they seek to challenge community fees until they filed their Amended Complaint on February 19, 2013. [SOF ¶¶ 63,101,120.] Just as with up-front pet fees, Plaintiffs never included a demand for community fees in any of their Chapter 93A demand letters to ERM. [SOF ¶ 116.]

## III. LEGAL STANDARD

A named representative in a class action must both be a member of the class or sub-class and must "possess the same interest and suffer the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ---, 131 S.Ct. 2541, 2550 (2011). This is a logical extension of the standing doctrine, which requires any plaintiff to establish an "actual" and "concrete" injury-in-fact that is particularized to her/him. *See*, *e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 576-77 (1992). "A plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to

4

which he has not been subject." *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982); *see also Plumbers' Union Local No 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 771 (1st Cir. 2011).

Furthermore, the Court "may only certify a class after a 'rigorous analysis of the prerequisites established by Rule 23.'" *In re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation*, No. 10-md-02193-RWZ, 2013 WL 4759649, at *2 (D. Mass. Sept. 4, 2013) (quoting *Smilow v. Sw. Bell Mobile Tel. Sys.*, 323 F.3d 32, 38 (1st Cir. 2003)); *see also Dukes*, 131 S. Ct. at 2551. This rigorous analysis includes ensuring that plaintiffs have proved each Rule 23(a) factor and at least one of the Rule 23(b) requirements. *Id*. Under Rule 23(a), plaintiffs must prove that:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Smilow*, 323 F.3d at 38. Under Rule 23(b)(3), a class action is only permitted if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Bank of America*, 2013 WL 4759649, at *2.

The Supreme Court has repeatedly emphasized that in evaluating rigorous compliance with Rule 23(a)'s requirements, trial courts must probe behind the pleadings and analyze them in a way that may overlap with the merits of the underlying claims. *Comcast Corp. v. Behrend*, 569 U.S. ---, 133 S. Ct. 1426, 1432 (2013). And as this Court and others have held, the

predominance standard of Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a)(2). *In re Bank of America*, 2013 WL 4759649, at *9.

**IV.     ARGUMENT**

Pursuant to Rule 23(b)(3), if one considers the ease with which individual plaintiffs may vindicate their individual G.L. c. 186, § 15B(1)(b) claims, it becomes apparent that the proposed class action here is not a superior method for resolving them. Even if the Court disagrees, the facts specific to each of the five fees bespeak five distinct subclasses rather than one massive class as proposed by plaintiffs. Furthermore, as to at least two of those subclasses, plaintiffs are plainly inadequate representatives.

**A.     <u>A class action is not a superior vehicle for resolving any of plaintiffs' claims.</u>**

In their motion papers, plaintiffs contend that their proposed class meets the requirements of Rule 23(b)(3). *See* Mem. at 9-13. The predominance standard of Rule 23(b)(3) looks at "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Bank of America*, 2013 WL 4759649, at *9. The superiority standard of Rule 23(b)(3) looks at "whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*.

The class action vehicle is not a superior method for fairly and efficiently adjudicating this controversy. Massachusetts provides for tenants two procedures that make the sorts of claims presented here readily resolvable on an individual basis. **First**, G.L. c. 186, § 15B claims are better suited to the Massachusetts Housing Court, which has precisely the jurisdiction and efficiencies to handle them. Since 1972, the Housing Court has functioned as a convenient and specialized place for landlords and tenants. *See generally* Daher and Chopp, 34 MASS. PRACTICE § 23 (2001). There is no minimum amount for jurisdiction in small claims matters; pro se

plaintiffs are permitted; and "housing specialists" are provided. *Id*. Cheap access to the court (filing fees starting at $40 for small claims under $500), speedy resolution of claims (especially small claims matters for any amount under $7,000), and the possibility of multiple damages and attorneys' fees are all found in Housing Court. *Id*. The putative class members in this case have a simple and state-supported locale for pursuing individual claims. Plaintiffs resort to drama, not facts, in contending that their proposed class action is superior: "No class member could possibly bear the expense of taking on a corporate behemoth the likes of ERM over a remedy this discrete and such a small individual recovery at stake," they say. Mem. at 13. Yet in the same breath, plaintiffs hail a Housing Court decision in *Broad Street Associates v. Levine*, *id*. at 4, as a case in which the plaintiff's § 15B(1)(b) rights were purportedly vindicated.

**Second**, because § 15B(1)(b) provides no internal remedy for violations, a claim thereunder must rely on the overlay of c. 93A, § 2, to supply a private cause of action.[3] Chapter 93A gives individual tenants the ability to recover up to three times what they could likely recover via participation in a class action. Plus, the fee-shifting provisions of Chapter 93A are specifically designed to encourage attorneys to take such cases on an individual basis. Finally, and perhaps most importantly, the demand procedures of Chapter 93A create a user-friendly environment for individual tenants to resolve § 15B(1)(b) claims *without resort to litigation* (or attorneys at all). Here, when the Perrys sent ERM a Chapter 93A demand letter asking for a refund of their move-in fee, ERM offered a full refund, with interest. [SOF ¶¶ 109-110.] When Miller did the same, ERM offered her a full refund with interest as well. [SOF ¶¶ 112-113.] When Miller and the Perrys sent a second Chapter 93A demand letter for application fees and pet rent, ERM again offered a full refund of these charges, with interest. [SOF ¶¶ 114-115.] All of

---

[3] This is typically done via 940 CMR 3.17(4), the Attorney General regulations passed pursuant to § 15B. *See*, *e.g.*, Amended Complaint ¶ 10.

this was done to avoid costly litigation (precisely as the drafters of Chapter 93A had hoped), not encourage it. How can an individual tenant do better than that? How can a class action lawsuit be superior to the simple mailing of a refund request? Chapter 93A is the epitome of a statutory scheme designed to facilitate resolution of individual claims using cheap, efficient, non-litigation solutions.

The combination of these Massachusetts-created mechanisms – Housing Court and Chapter 93A – ensures that G.L. c. 186, § 15B claims brought by an individual tenant are not "negative value" claims. *Cf.* Mem. at 11. Plaintiffs state that "[a]ggregate litigation is the *only* viable method by which Plaintiffs and the class may obtain relief," *id*. (emphasis added), and yet *Broad Street*, a "one-off" suit involving § 15B, disproves this very point. Furthermore, none of the cases cited by plaintiffs in support of their "negative value" theory involve Massachusetts tenants, nor do any deal with Chapter 93A claims. The cases simply recite generalized Rule 23(b)(3) proclamations, many of which run contrary plaintiffs' arguments. If, as plaintiffs state, one of the primary reasons for aggregation of claims is to convert "relatively paltry potential recoveries" into "something worth someone's (*usually an attorney's*) labor," *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (emphasis added), then this is negated by the simple Chapter 93A demand/offer framework relied on here. Tenants and former tenants in Massachusetts desirous of complaining about any of the five "Fees" can resolve their claims without lawyers, can find lawyers if they wish, and can bring their claims in a fast and efficient forum if they must. The combination of Chapter 93A process and a Housing Court venue, for all

of the individual tenants whom plaintiffs seek to aggregate and represent, defeats superiority pursuant to Rule 23(b)(3).[4]

> **B.  Plaintiffs lack standing to bring claims on behalf of a subclass of tenants who paid either ERM's "up-front pet fee" or ERM's "community fee," and plaintiffs are not adequate representatives to claim refunds of these fees.**

Neither the Perrys nor Miller have standing to bring class claims against ERM for payment of up-front pet fees or community fees. They cannot be adequate representatives of tenants who paid these fees.

With respect to up-front pet fees, Miller did not have a pet at all, so that should end the inquiry as to her. [SOF ¶ 61.] The Perrys did own a pet (a cat), but admitted they were never charged an up-front fee for it. [SOF ¶ 100.] Instead, they paid more rent—$30.00 per month. [SOF ¶ 92.]

With respect to community fees, both Miller and the Perrys admitted that they never paid, nor were charged, such a fee. [SOF ¶¶ 63,101.] This makes sense given that ERM only began charging a community fee to new tenants in May 2012, well after plaintiffs' tenancies began. [SOF ¶ 36.] Furthermore, ERM's community fee is not the same as a "move-in fee" (which plaintiffs did pay), nor does it fit within the framework of c. 186, § 15B, because it is not an "amount" that is paid "at or prior to the commencement of any tenancy." Instead, it is paid *after* the commencement of the tenancy because it is tied to ERM's 30-day Satisfaction Guarantee, which allows a new tenant to end her lease if, after 30 days, she is unhappy with her apartment for any reason. [SOF ¶¶ 39-41.]

Critical to the Rule 23 framework is that plaintiffs be able to marshal evidence to *prove* the Rule 23(a)/(b) factors. *Smilow*, 323 F.3d at 38. Here, however, plaintiffs do not – indeed,

---

[4] It also likely explains the paucity of class actions brought in the c. 186, § 15B arena, despite the fact that the Statute has been in place since 1969. In and of itself, this paucity is not a reason to deny class certification, but it suggests that plaintiffs' claims for superiority based on "negative-value claims" are overblown.

cannot – possess such evidence with regard to up-front pet fees or community fees, because they did not pay these fees. Likewise, they did not send ERM a Chapter 93A demand letter for these fees because there was no amount to refund to them. [SOF ¶ 116.] How, then, can they prove a case – either on c. 186, § 15B or c. 93A grounds – for a putative class of individuals who *might* have paid those two fees? Plaintiffs are completely inappropriate representatives in this regard. *See* 1 NEWBERG ON CLASS ACTIONS § 2:5 (5th ed. 2011) ("A finding that no class representative has standing with respect to a given claim requires dismissal of that claim."); 5 MOORE'S FEDERAL PRACTICE § 23.63 (3d ed. 2010) (same).

C. **Plaintiffs' application fee subclass is limited to the time period between February 19, 2009 and September 27, 2013.**

Plaintiffs made a claim for application fees for the first time on February 19, 2013, when they filed their Amended Complaint. [SOF ¶ 119.] The statute of limitations for this claim – whether considered under c. 186, § 15B or under c. 93A – is four years. *See* G.L. c. 260 s. 5A; *see also Lambert v. Fleet National Bank*, 449 Mass. 119, 126 (2007). Thus, the time period for plaintiffs' subclass for application fees begins on February 19, 2009 (not May 1, 2008, as proposed in Plaintiffs' motion).[5]

Any attempt by plaintiffs to "relate back" these *application fee* claims to the Perrys' May 1, 2012 complaint for *move-in fees* is without merit. An amended complaint relates back to a prior complaint only if it "arose out of the conduct, transaction, or occurrence" alleged in the earlier pleading. Fed. R. Civ. P. 15(c). Here, however, the move-in fees contested in the initial complaint are factually and conceptually different from the application fees contested in the

---

[5] The "commencement of an action" so as to satisfy the statute of limitations for 93A purposes is the filing of the lawsuit containing the 93A claim, not the sending of the 93A demand letter. Gilleran, THE LAW OF CHAPTER 93A § 10.7, at 519 (2d ed. 2007); *Baldassari v. Public Finance Trust*, 369 Mass. 33, 44 (1975). Thus, for class period purposes it does not matter when plaintiffs sent ERM a 93A demand letter specific to application fees. Even if it did, that letter was not sent until well after May 1, 2012, and thus plaintiffs' proposed class start date of May 1, 2008 cannot stand. [SOF ¶ 114.].

Amended Complaint. Application fees are paid prior to the existence of a contractual offer and have nothing to do with the lease or tenancy. Interested persons must qualify in order to receive a lease offer, and written applications – including criminal background checks, employment history checks, rental history checks, and credit checks – are the means by which applicants can so qualify. [SOF ¶¶ 5-7.] Move-in fees, in contrast, are described in the lease, are paid only when a lease is signed, and are for costs associated with moving into a particular apartment. [SOF ¶¶ 12-14.]

Miller and the Perrys paid their application fees on April 14, 2010 and December 13, 2011, respectively, in both cases well before May 2012, when their initial complaints were filed. [SOF ¶¶ 53,91.] They could have claimed application fees in these initial complaints, but they chose not to. The relation-back rules "are not so broad as to encompass any claim that was known to the complainant that could have been brought in a timely fashion." *Weber v. Community Teamwork, Inc.*, 434 Mass. 761, 785-86 (2001) (quoting *Wynn & Wynn, P.C. v. Massachusetts Comm'n Against Discrimination*, 431 Mass. 655, 673 (2000)); *see also Moniz v. Bayer A.G.*, 447 F. Supp. 2d 31, 35 (D. Mass. 2006) (noting that "the original complaint must provide a defendant with sufficient notice of the misconduct alleged against it in the amended complaint in order for relation-back to be appropriate"). In the class action context, a class definition cannot be expanded via an amended complaint "in order for plaintiff to allege new and unrelated misconduct for which to hold defendants liable." *Moniz*, 447 F. Supp. 2d at 37; *see also Knudsen v. Liberty Mutual Insurance Co.*, 435 F.3d 755, 758 (7th Cir. 2006) ("[A] novel claim tacked on to an existing case commences new litigation for purposes of [CAFA]."). Yet that is exactly what plaintiffs are attempting here.

In addition to the temporal limitations on the front end of plaintiffs' application fee sub-class, the back end is similarly limited because ERM discontinued its practice of charging application fees to applicants in Massachusetts on September 27, 2013. [SOF ¶ 10.] Thus, the maximum scope of plaintiffs' application fee subclass must be as follows:

> ***All current and former tenants at ERM properties in Massachusetts who, in connection with their rental applications, paid a non-refundable application fee between February 19, 2009 and September 27, 2013.***

### D. **Plaintiffs' pet rent subclass is limited to the time period between February 19, 2009 and the present, and is limited to the pro-rated portion of any such fees paid at or prior to the commencement of the tenancy.**

For exactly the same reasons as discussed above, plaintiffs' subclass regarding monthly pet fees (aka "pet rent") can commence no earlier than February 19, 2009. The Perrys paid their first pet rent at Longview Place in December 2011, almost half a year before they filed their initial complaint on May 1, 2012.[6] They could have challenged pet rent from the beginning, but they chose not to, waiting instead until their Amended Complaint on February 19, 2013. Furthermore, while the Perrys assiduously attempt to avoid labeling the monthly charge for their cat as "rent," they cannot avoid the fact that "rent" is exactly what it was: it was listed in the lease as "rent"; it was paid at the same time as "rent"; and it was pro-rated in the same fashion as "rent." [SOF ¶¶ 31-33.]

In addition to the $30.00 monthly rent for their cat, the Perrys paid $8.71 as part of their pro-rated monthly rent for December 2011, because they moved in with a week remaining in December. [SOF ¶ 96.] This pro-rated portion of pet rent also did not violate the Security Deposit Statute, because it was part of the first month's rent. However, if a subclass of payors of prorated pet rent can plausibly be certified, it can be no greater than the following:

---

[6] Miller, of course, did not own a pet, and thus her ability to represent any "pet fee" classes is nil. [SOF ¶ 61.]

> *All current and former tenants at ERM properties in Massachusetts who, at or prior to the commencement of their tenancy, paid the pro-rated portion of non-refundable monthly pet rent between February 19, 2009 and the present.*

Certification of a class any broader than this would suggest the absurd: that the Security Deposit Statute is violated by the payment of monthly rent after the tenancy has commenced.

### E. Plaintiffs' move-in fee subclass is limited to the time period between May 1, 2008 and February 28, 2012.

Plaintiffs' move-in fee subclass is the only subclass for which the class period can begin on May 1, 2008, because ERM's move-in fees are the only fees that either Miller or the Perrys complained about in their initial complaints filed in the first week of May 2012, or in their initial Chapter 93A demand letters. [SOF ¶¶ 108-109,111-112.] As of February 2012, however, in light of *Hermida*, ERM had already stopped charging move-in fees in Massachusetts.[7] The maximum scope of plaintiffs' move-in fee subclass is therefore as follows:

> *All current and former tenants at ERM properties in Massachusetts who, at or prior to the commencement of their tenancy, paid a non-refundable move-in fee between May 1, 2008 and February 28, 2012.*

### CONCLUSION

For the reasons stated above, plaintiffs' motion for class certification should either be denied in its entirety on superiority grounds, or denied as to the breadth of the class proposed and specifically modified to delineate the five subclasses proposed above, only three of which can plausibly proceed on standing and adequacy grounds.

---

[7] Plaintiffs' contention that Judge Young granted summary judgment for the *Hermida* plaintiffs "on the precise claim as asserted by Plaintiffs here," Mem. at 3, is without basis in fact. The "amenity use fee" – a *single* fee – at issue in *Hermida* is factually distinct from *all five* of the fees at issue here. Nor does ERM even charge an "amenity use fee" akin to that at issue in *Hermida*. [SOF ¶ 18.] ERM simply, and quite reasonably, made the decision to discontinue move-in fees because *Hermida* unsettled the law in Massachusetts. [SOF ¶ 17.]

13

Respectfully submitted,

EQUITY RESIDENTIAL MANAGEMENT, L.L.C.,

By its attorneys,

/s/ Thomas H. Wintner
Thomas H. Wintner (BBO #667329)
EDWARDS WILDMAN PALMER LLP
111 Huntington Avenue
Boston, MA 02199
(617) 239-0100 (telephone)
(617) 227-4420 (fax)
twintner@edwardswildman.com

Craig M. White (*pro hac vice*)
EDWARDS WILDMAN PALMER LLP
225 West Wacker Drive
Chicago, IL 60606
(312) 201-2000 (telephone)
(312) 201-2555 (fax)
cwhite@edwardswildman.com

Dated: December 13, 2013

## CERTIFICATE OF SERVICE

I certify that the above document was filed electronically using the CM/ECF system on December 13, 2013, and thereby delivered by electronic means to all counsel of record.

/s/ Thomas H. Wintner

AM 26154445.1