UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 12-10779-RWZ


BRIAN PERRY, KIM PERRY, and
CHERYL MILLER, *on behalf of themselves
and all others similarly situated*

v.

EQUITY RESIDENTIAL MANAGEMENT, L.L.C.


MEMORANDUM OF DECISION

August 26, 2014


ZOBEL, D.J.

Plaintiffs Brian Perry, Kim Perry, and Cheryl Miller, on behalf of themselves and

all others similarly situated, bring this action against defendant Equity Residential

Management, L.L.C., alleging that defendant violated the Massachusetts Security

Deposit Statute, Mass. Gen. L., ch. 186 § 15B(1)(b), by charging plaintiffs certain fees

at or before the commencement of their tenancies.  Before me are defendant's motion

to consolidate cases (Docket # 46), the parties' cross-motions for summary judgment

(Docket ## 56, 69), and plaintiffs' motion for class certification (Docket # 28).

I.     **Background**

Brian and Kim Perry ("the Perrys"), who now reside in Illinois, lived at Longview

Place in Waltham, Massachusetts, from December 23, 2011, until approximately July

2012.  From May 2, 2010, through approximately July 7, 2012, Cheryl Miller lived at 10

Emerson Place in Boston, Massachusetts.  Defendant, a Delaware LLC with its principal place of business in Illinois, manages and leases approximately 31 residential apartment complexes in Massachusetts, including the two buildings in which plaintiffs were tenants.  All told, it leases approximately 6,680 apartments in the Commonwealth.

In Massachusetts,

> [a]t or prior to the commencement of any tenancy, no lessor may require a tenant or prospective tenant to pay any amount in excess of the following:
>
>> (i) rent for the first full month of occupancy; and,
>>
>> (ii) rent for the last full month of occupancy calculated at the same rate as the first month; and,
>>
>> (iii) a security deposit equal to the first month's rent . . . ;  and,
>>
>> (iv) the purchase and installation cost for a key and lock.

Mass. Gen. L. ch. 186 § 15B(1)(b).  Plaintiffs contend that defendant violated this statute by charging five mandatory, non-refundable fees at or prior to the commencement of their tenancies:

1. <u>Application Fee</u> - $50 per person.  The Perrys paid $100; Miller paid $50.

2. <u>Amenity Fee</u> - also called a "move-in fee."  The Perrys paid $350 (later reduced to $99); Miller paid $500.

3. <u>Community Fee</u> - $500 per tenancy.  Plaintiffs allege that this fee replaced the "amenity fee."  Defendant, they say, charges the fee at the commencement of the tenancy but does not collect the fee until after the first month of the tenancy. Because they paid the amenity fee, its alleged predecessor, neither Miller nor the Perrys paid the community fee.

4. <u>Up-Front Pet Fee</u> - pet owners pay a $250 up-front fee.  Neither named plaintiff paid this fee.

5. <u>Monthly Pet Fee</u> - pet owners pay $30 per month. The Perrys paid this fee.[1]

Plaintiffs say these fees are unlawful because they do not fit within any of the statutorily permitted categories.  They are not a security deposit, first or last month's rent, or reimbursement for the cost of a lock and key.  Their five-count complaint alleges that defendant has violated the Security Deposit Statute (Count I) and Massachusetts General Laws chapter 93A (Count II).  They also contend that defendant has unjustly enriched itself (Count III) and seek a declaratory judgment that defendant's conduct is unlawful (Count IV) and an injunction ordering defendant to stop charging fees to its Massachusetts residents (Count V).[2]

## II.    Motion to Consolidate (Docket # 46)

Defendant moves to consolidate this action with <u>Vincelette v. Equity Residential Management, L.L.C.</u>, No. 13-10710-RWZ, a removed action pending before me.[3]  It states as support (1) Equity is the primary defendant in both actions; (2) both actions allege violations of the Security Deposit Statute and chapter 93A; and (3) both actions involve the same allegedly unlawful fees.  Docket # 46 at 1-2.  Plaintiffs in the present action and in <u>Vincellete</u> each filed an opposition (Docket # 77, 78).  First, they argue

---

[1]It is not altogether clear why the Perrys paid the monthly pet fee but not the up-front pet fee.

[2]Jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d), which confers to the district courts original jurisdiction of any civil action in which the amount in controversy exceeds $5,000,000 and any member of a class of plaintiffs is a citizen of a state different from that of any defendant.  <u>Id.</u> § 1332(d)(2)(A).  Given the number of apartments and fees involved, there is a "reasonable probability" that the value of  plaintiffs' claims exceeds $5,000,000.  <u>Amoche v. Guar. Trust Life Ins. Co.</u>, 556 F.3d 41, 43 (1st Cir. 2009).  And because most of the plaintiffs are Massachusetts residents and defendant is a Delaware corporation with its principal place of business in Illinois, the statute's minimal diversity requirement is satisfied.

[3]<u>Vincelette</u> is itself four consolidated cases.  The Suffolk County Superior Court consolidated them before removal.  No. 13-10710-RWZ, Docket # 2-9.

that although Equity is a common defendant, the <u>Vincelette</u> plaintiffs also sued the

owner of each of the four individual properties in which the plaintiffs lived.[4]  Docket # 78

at 1-2.  Second, they claim that the present action is procedurally more advanced than

<u>Vincelette</u>, in which little discovery has taken place.[5]  <u>Id.</u>; Docket # 77 at 2.  It makes

little sense, they urge, to consolidate actions with uncommon defendants and in distinct

procedural stations.

 I may consolidate actions if they involve a common question of law or fact.  Fed.

R. Civ. P. 42(a)(2).  This is a threshold issue.  <u>Seguro de Servicio de Salud de P.R. v.

McAuto Sys. Grp., Inc.</u>, 878 F.2d 5, 8 (1st Cir. 1989).[6]  If the party seeking

consolidation passes this first test, I have "broad discretion in weighing the costs and

benefits of consolidation to decide whether that procedure is appropriate."  <u>Id.</u>  When

doing so, I should consider "the convenience or inconvenience to the parties, the

judicial economy, the savings in time, effort or expense and any confusion, delay or

prejudice that might result from consolidation."  <u>Gilliam v. Fid. Mgmt. & Research Co.</u>,

No. Civ. A 04-11600NG, 2005 WL 1288105, at *1 (D. Mass. May 3, 2005) (internal

quotation and citation omitted).

---

[4]The <u>Vincelette</u> plaintiffs erroneously state that "<u>Vincelette</u> is only concerned with a single property, the South Winds Apartments in Fall River, Massachusetts."  Docket # 77 at 2.  In fact, as the <u>Perry</u> plaintiffs note, and as the record confirms, four separate properties are involved.  Docket # 78 at 2; <u>see</u> No. 13-10710-RWZ, Docket ## 2-1--2-4.

[5]Curiously, plaintiffs profess to need more time for discovery, but oppose defendants' motion for an extension of time to respond to plaintiffs' motion for class certification in <u>Vincelette</u> (No. 13-10710-RWZ, Docket # 29) on the ground that no further discovery is necessary at this time.

[6]Although Rule 42(a) only requires commonality of facts or law, <u>McAuto</u> adds commonality of party to the threshold inquiry.  <u>McAuto</u>, 878 F.3d at 8.  That additional requirement is satisfied here because Equity is a common defendant.

Common factual and legal questions exist.  The suits allege violation of the same statutes by the same means—charging unlawful fees.  The fees themselves are the same.  These commonalities easily satisfy the threshold inquiry.  The balancing factors point in the same direction.  The substantial overlap between the cases makes consolidation more economical and expedient.  And there is little reason to think that the purported procedural lag in <u>Vincelette</u> is significant.  As the cross-motions for summary judgment make plain, these cases turn on a statutory interpretation question: whether the fees violate the Security Deposit Statute.  It is not altogether clear what discovery the parties need in these circumstances, so much so that neither party bothers to spell it out.  Consolidation offers substantial benefits and no intelligible drawbacks.  The motion is allowed.

## III.   Cross-Motions for Summary Judgment (Docket ## 56, 69)[7]

### A.   Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  I must view the record in the light most favorable to the nonmovant and draw all justifiable inferences in that party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  If the evidence presented would allow a reasonable jury to return a verdict for the nonmovant, summary judgment must be denied.  <u>Id.</u> at 248.  When the parties cross-move for summary judgment, I apply the

---

[7]Only the parties in <u>Perry</u> cross-move for summary judgment.  Because the cases are consolidated, however, this memorandum of decision applies to <u>Vincelette</u> as well.

same standard to each motion.  Atl. Fish Spotters Ass'n v. Evans, 321 F.3d 220, 224

(1st Cir. 2003).

**B.   Violation of the Security Deposit Statute, Mass. Gen. L. ch. 186 §
      15B(1)(b) (Count I)**

**1.   Language of Section 15B(1)(b)**

The main issue in this case is whether section 15B(1)(b)'s language allows a

landlord to require that tenants pay up-front fees other than the four statutorily

permitted charges.  The parties offer competing interpretations of the statute.  Plaintiffs

contend that section 15B(1)(b) just lists the permissible charges; any charge not on the

list is prohibited.  Defendant responds that the statute's legislative history demonstrates

its ambiguity.

I am not the first to consider this matter.  Two of my colleagues have held that

the language of section 15B(1)(b) is unambiguous.  Gardner v. Simpson Fin. Ltd.

P'ship, No. 09-11806-FDS, 2012 WL 1109104, at *8 (D. Mass. Mar. 30, 2012) (Saylor,

J.); Hermida v. Archstone, 826 F. Supp. 2d 380, 384 (D. Mass. 2011) (Young, J.).[8]  I

join them.  Giving the statute's words their ordinary meaning "consonant with sound

reason and common sense," Harvard Crimson, Inc. v. President & Fellows of Harvard

College, 840 N.E.2d 518, 522 (Mass. 2006), section 15B(1)(b) simply is not susceptible

of more than one reasonable construction.  The statute is a list.  If a fee is on the list

---

[8]I do not agree with defendant's claim that Judge Young merely accepted the parties' stipulation
that section 15B(1)(b) was unambiguous in Hermida.  Def.'s Mem. in Opp. to Pls.' Cross-Mot. for Summ.
J., Docket # 73, at 4-5.  Courts do not take the law by stipulation of the parties.  Estate of Sanford v.
Comm'r, 308 U.S. 39, 51 (1939); United States v. Teeter, 257 F.3d 14, 28 (1st Cir. 2001).  A fair reading
of Hermida demonstrates that Judge Young analyzed the statute and concluded it was unambiguous.
826 F. Supp. 2d at 384.

then it is a permissible up-front charge; if it is not on the list, then it is impermissible. For this reason, I need not—and indeed, may not—indulge defendant's spirited recitation of the statute's history.  See Pyle v. Sch. Comm., 667 N.E.2d 869, 871-72 (Mass. 1996); New Eng. Med. Ctr. Hosp., Inc. v. Comm'r, 412 N.E.2d 351, 352 (Mass. 1980) ("[W]here the language of a statute is plain and unambiguous, legislative history is not ordinarily a proper source of construction.").

Defendant conjures ambiguity in the statute in several ways.  Each is unconvincing.  First, defendant asserts that the statute fails to define key terms, like "rent."  Def.'s Mem. in Supp. of Cross-Mot. for Summ. J., Docket # 57, at 5.  "Rent," though, has an ordinary meaning, which I am bound to accept and apply.  See Hashimi v. Kalil, 446 N.E.2d 1387, 1389 (Mass. 1983).  Second, defendant reads the statute's "in excess of" language to set forth a *total amount* of up-front charges.  Mem. in Supp. at 4.  No matter whether the charges fit within the statutorily permitted categories, a landlord may not require that a tenant pay more than the sum of first month's rent, last month's rent, a security deposit equal to one month's rent, and the cost of a lock and key before his or her tenancy begins.  Id.  Judge Young rejected that interpretation in Hermida.  826 F. Supp. 2d at 386-87.  Defendant does not identify any flaws in his reasoning, and neither do I.  Finally, defendant maintains that a plain reading of the statute is incompatible with the fundamental principle of freedom of contract between landlord and tenant.  Mem. in Supp. at 7, 10.  True enough.  In fact, section 15B recognizes that landlord and tenant are often in unequal negotiating positions and seeks to level the playing field.  Hermida, 826 F. Supp. 2d at 386 ("The major

7

legislative concern . . . has been for the tenant."); <u>Goes v. Feldman</u>, 391 N.E.2d 943, 947 (Mass. App. Ct. 1979) ("By limiting the freedom of landlords and tenants to contract in this regard, the Legislature manifested a concern for the welfare of tenants in residential property who, as a practical matter, are generally in inferior bargaining positions . . . ."). Defendant's argument contradicts the express purpose of the Legislature.

Having established that the statute creates categories of permissible charges, I must now decide whether the fees defendant charged plaintiffs fit within them.

### 2.   Defendant's Fees

#### a.   Application Fee

Two Commonwealth courts have concluded that section 15B(1)(b) does not authorize landlords to charge prospective tenants an application fee.  <u>See</u> <u>Dolben Co. v. Friedmann</u>, No. 10034, 2008 WL 81549, at *4 (Mass. App. Div. Jan. 2, 2008); <u>Broad St. Assocs. v. Levine</u>, No. 12-SP-2041 (Northeast Housing Ct. July 30, 2011).  I agree.

#### b.   Amenity Fee/Move-in Fee

The amenity fee, at times called a move-in fee, is indistinguishable from the "amenity use fee" Judge Young found unlawful in <u>Hermida</u>.  It is not on the list of permissible charges; it is therefore prohibited.[9]

---

[9]Defendant's argument that the fee is used to offset costs, "such as marketing, lease preparation, communications with prospective tenants, and decorating," Mem. in Supp. at 12, is of no consequence. The fact that Miller paid a move-in fee in her current apartment, which defendant does not manage, is irrelevant as well.

### c.　　Community Fee[10]

Defendant argues the community fee is lawful because it does not collect the fee until the second month of tenants' occupancy.  Mem. in Supp. at 15.  But the statute prohibits landlords from "requir[ing] a tenant or prospective tenant to pay" unlisted fees. That is just what defendant does when it charges the fee before a tenant moves in. Deferring collection does not make an unlawful fee lawful.

### d.　　Up-Front Pet Fee

Like the others, the up-front pet fee is not among the permissible charges.  It is therefore prohibited.[11]

### e.　　Monthly Pet Fee

The monthly pet fee is not incurred up front, but rather each month during which the tenant owns a pet.  Because plaintiffs became obligated to pay the fee after they were already tenants, they may not turn to section 15B(1)(b) for relief.[12]

### f.　　Summary

Plaintiffs' motion for summary judgment on Count I is allowed in all respects

---

[10]Defendant submits that neither the Perrys nor Miller paid the community fee or the up-front pet fee, they lack standing to bring these claims on behalf of a class.  It also contends that plaintiffs lack standing because they never sent a chapter 93A demand letter to defendant regarding these two fees. Like defendant, I address these related standing arguments *infra* in the class certification analysis.

[11]Defendant analogizes the up-front pet fee to insurance premiums, which Judge Saylor concluded a landlord could charge a tenant up front despite the absence of insurance on the section 15B(1)(b) list. Gardner, 2012 WL 1109104, at *8. Gardner is readily distinguishable.  As Judge Saylor recognized, a landlord may require a tenant to obtain liability insurance consistent with Massachusetts law. Id. (citing Peterson v. Silva, 704 N.E.2d 1163, 1165-66 (Mass. 1999)).  "It would elevate form over function" to prohibit landlords from conveniencing tenants by offering them an otherwise legally required product at the outset of their tenancies. Id.

[12]I acknowledge that the Northeast Housing Court concluded a monthly pet fee violates section 15B(1)(b) in Levine, No. 12-SP-2041 (Docket # 70-1).  I respectfully disagree with its conclusion.

9

save for the monthly pet fee.

### C.     Violation of Chapter 93A (Count II)

Massachusetts General Laws chapter 93A section 2(a) makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  The attorney general may make rules and regulations to interpret section 2(a)'s dictates, id. § 2(c), and it has done so as relevant here:

It shall be an unfair or deceptive practice for an owner[13] to:

(a) require a tenant or prospective tenant, at or prior to the commencement of any tenancy, to pay any amount in excess of the following:

> 1. rent for the first full month of occupancy; and

> 2. rent for the last full month of occupancy calculated at the same rate as the first month; and

> 3. a security deposit equal to the first month's rent; and,

> 4. the purchase and installation cost for a key and lock.

940 C.M.R. § 3.17(4)(a).  The statute and the implementing regulation are co-extensive, so a violation of section 15B(1)(b) is a violation of chapter 93A.  Hermida, 826 F. Supp. 2d at 387; Friedmann, 2008 WL 81549 at *4; Flatte v. Carifio, No. 9405, 1997 WL 342250, at *2 (Mass. App. Div. June 12, 1997).  I have established that defendant has violated section 15B(1)(b) as to four of the five challenged fees. Therefore, it has engaged in an unfair and deceptive practice to the same extent.

---

[13]The Amended Class Action Complaint refers to defendant as the "operat[or], manag[er], and [lessor]" of the units in question.  Am. Class Action Compl. ¶ 4.  Defendant still falls within the ambit of the regulation, however, because it includes as an owner "one who manages, controls, and/or customarily accepts rent on behalf of the owner."  940 C.M.R. § 3.01.

Plaintiffs are entitled to summary judgment on Count II.

### D.    Unjust Enrichment (Count III)

A claim of unjust enrichment is unavailable when a party has an adequate remedy at law.  Ben Elfman & Sons, Inc. v. Criterion Mills, Inc., 774 F. Supp. 683, 687 (D. Mass. 1991).  Plaintiffs' 93A claim provides such a remedy and therefore precludes their claim for unjust enrichment.  Fernandes v. Havkin, 731 F. Supp. 2d 103, 114 (D. Mass. 2010).

### E.    Injunction (Count V)[14]

Plaintiffs seek an injunction "compelling ERM to cease and desist from charging Fees to its Massachusetts tenants."  Am. Class Action Compl. ¶ 73.  Typically, injunctive relief is only available when plaintiff can demonstrate, *inter alia*, irreparable harm.  Winter v. Natural Resources Def. Council, Inc., 555 U.S. 7, 20 (2008) (preliminary injunction); eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (permanent injunction).  A harm is irreparable only if no adequate legal remedy exists.  Foxboro Co. v. Arabian Am. Oil Co., 805 F.2d 34, 36 (1st Cir. 1986) ("We do not find irreparable injury where only money is at stake . . . .").  Here, plaintiffs lost only money.  The harms they suffered are adequately quantifiable and compensable at law.  There is no irreparable harm in absence of injunctive relief.  The motion for an injunction is denied.

---

[14]By awarding plaintiffs summary judgment on Counts I and II, I have, in essence, declared that defendant's fee-charging practices are unlawful.  Consequently, there is no need for me to award a separate declaratory judgment (Count IV).  I also note that like an injunction, a declaratory judgment is not a cause of action, as plaintiffs pleaded it, but a form of relief.  Schwartz v. CACH, LLC, No. 13-12644-FDS, 2013 WL 6152343, at *2 (D. Mass. Nov. 21, 2013) (citing Madden v. State Tax Comm'n, 133 N.E.2d 252, 254 (Mass. 1956)).

## IV.    Motion for Class Certification (Docket # 28)[15]

### A.    Standing

"The doctrine of standing . . . requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (internal quotation and citation omitted; emphasis removed).  In the class action context, "[a] litigant must be a member of the class which he seeks to represent." Sosna v. Iowa, 419 U.S. 393, 403 (1975); Bailey v. Patterson, 369 U.S. 31, 32-33 (1962).  Neither the Perrys nor Miller paid the community fee or the up-front pet fee.  This is fatal to their claims for relief, says defendant, because they lack standing to represent a class of tenants who paid those fees.  Mem. in Opp. to Pls.' Mot. for Class Cert., Docket # 59, at 9-10.  Plaintiffs counter that this basic principle is not an impediment because "[t]he community fee is simply a re-styled, re-labeled move-in fee or amenity fee, collected at a later time."  Reply Mem. in Supp. of Mot. for Class Cert., Docket # 67, at 14.  In other words, the Perrys and Miller paid the move-in/amenity fee, which is identical to the community fee, and they are therefore members of the class they seek to represent.

A glance at defendant's internal emails shows that this is correct:

●      "The [non-refundable move-in fee] will be pushed into the second month. We will not collect at move in.  But we will collect during the second month."  Docket # 71-5 (Email from Equity employee Tom Lebling to

---

[15]Plaintiffs moved to certify a class in both Perry and Vincelette.  Equity filed an opposition in Perry; its opposition in Vincelette is not yet due.  Because the cases are consolidated and legally indistinguishable, there is no reason to think Equity will oppose in Vincelette on different grounds than it does in Perry.  Therefore, I need not wait to decide plaintiffs' class certification motion.

Equity's Vice President of Revenue Management Dave Romano).

● "We will have to stop collecting our [non-refundable move-in fee] in MA. Actually, we will be pushing the fee collection into the second full month. So, we will have one month of zero fees during this change."  Docket # 71–6 (Email from Lebling to Equity's Financial Services Director Martha Sharrock).

● "We are finalizing the details that will allow us to collect an amenity/common area fee at the beginning of their second full month of residency."  Docket # 71-8 (Email from Equity employee Lynn Bora).

Simply put, defendant intended to replace the move-in/amenity fee with the community fee.  The fees are one and the same.  Plaintiffs have demonstrated the required personal stake in the outcome of the litigation to confer standing on them to represent community fee-paying tenants.[16]  See Summers, 555 U.S. at 493.

The same cannot be said for the up-front pet fee.  The Perrys and Miller did not pay the up-front fee, and I have already established section 15B(1)(b) does not permit recovery of monthly pet fees.  Accordingly, neither party may represent a class of up-front pet fee payers.  Sosna, 419 U.S. at 403.  But two of the named plaintiffs in the now-consolidated Vincelette action did pay the up-front pet fee.  No. 13-10710-RWZ, Docket # 2-1 at ¶ 46 (Vincelette Complaint); id. # 2-2 at ¶ 47 (Barnes Complaint). Accordingly, they may represent a class of like payers.

### B.    Legal Standard

The party seeking class certification must show that

(1) the class is so numerous that joinder of all members is impracticable;

---

[16]For this same reason, defendant's argument that plaintiffs failed to send defendant a chapter 93A demand letter with respect to the community fee is without merit.  The record makes clear that Miller and the Perrys sent defendant a chapter 93A demand letter regarding the move-in/amenity fee.  Docket # 58-14.

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four requirements are known as numerosity, commonality, typicality, and adequacy. See Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003). I "must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class." Id.; see Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.").

The party seeking class certification must also satisfy one of the three parts of Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3), which authorizes a class action where "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## C. Subclasses

"When appropriate, a class may be divided into subclasses that are each treated as a class." Id. 23(c)(5). "Subclasses must be created when differences in the positions of class members require separate representations and separate counsel." Federal Judicial Center, Manual for Complex Litigation, Fourth § 21.23 (2004). The

Rule is designed to provide courts with additional flexibility to manage class actions. 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1790 (3d ed. 1998).  I may create subclasses on my own initiative.  Id.

Subclasses make sense here.  Assuming that the community fee is a clone of the move-in/amenity fee, there are three separate fees involved.  Not every tenant has paid every fee (especially the up-front pet fee), and so subclasses will facilitate easier organization of the class members according to their fee-paying history.  See id. (stating subclasses may help make the case more manageable, which is relevant to the superiority analysis under Rule 23(b)(3)); 8 Alba Conte & Herbert Newberg, Newberg on Class Actions § 24:24 ("Bifurcation or the creation of subclasses may circumvent commonality problems.").  Accordingly, I divide the proposed global class into three subclasses, one for each fee involved.

Each subclass must meet the requirements of Rule 23 to maintain a class action, Riva v. Ashland, Inc., No. 09-12074-DJC, 2011 WL 6202888, at *12 (D. Mass. Dec. 13, 2011), but as seen below, the analysis does not differ greatly among the subclasses.

### D.     Rule 23(a) Requirements

Defendant concedes that plaintiffs have satisfied each of the Rule 23(a) requirements and instead disputes only the superiority requirement of Rule 23(b)(3). Mem. in Opp. at 6-9.  I nevertheless undertake the "rigorous analysis" that must precede certification.  Smilow, 323 F.3d at 38.  That analysis proves to be quite straightforward.

### 1.     Numerosity

The numerosity requirement of Rule 23(a) is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). I "may draw reasonable inferences from the facts presented to find the requisite numerosity." McCuin v. Sec'y of Health & Human Servs., 817 F.2d 161, 167 (1st Cir. 1987). Defendant operates approximately 6,680 apartment units in the Commonwealth. Docket # 30-1. I can reasonably infer from this figure that the parties are too numerous to make joinder practicable. Plaintiffs have satisfied the numerosity prerequisite.

### 2.   Commonality and Typicality

To show commonality, plaintiffs must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This "'low hurdle'" is met if there is "even a single common legal or factual issue." In re Evergreen Ultra Short Opportunities Fund Sec. Litig., 275 F.R.D. 382, 388 (D. Mass. 2011) (quoting Swack v. Credit Suisse First Bos., 230 F.R.D. 250, 259 (D. Mass. 2005)). Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The requirement "'is satisfied when the [named] plaintiff's injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims, and when the plaintiff's claims and those of the class are based on the same legal theory.'" Swack, 230 F.R.D. at 260 (quoting Guckenberger v. Bos. Univ., 957 F. Supp. 306, 325 (D. Mass. 1997)). These prerequisites are doubtless satisfied here because there are almost no individual issues whatsoever. The members of each subclass paid the same fee and allege violation of the same laws.

### 3.    Adequacy

The adequacy prerequisite requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This involves a two-part test: "[t]he moving party must show first that the interests of the representative party will not conflict with the interests of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation."  Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985).  No conflicts of interest are apparent here.  Plaintiffs' counsel are qualified and experienced.  See Docket ## 30-4, 30-5.  The adequacy prong is met.

### E.    Rule 23(b) Requirements

### 1.    Predominance

To demonstrate predominance, plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  There is no mechanical, single-issue test for predominance.  Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000).  The key inquiry is whether the "proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).  There must be "a sufficient constellation of common issues [to] bind[] class members together."  Mowbray, 208 F.3d at 296.

As is now clear from my discussion of the Rule 23(a) factors, the facts and law underlying the subclass members' claims are identical.  The only remaining source of potential individual issues is damages.  But differing damages among class members

does not defeat predominance.  <u>Smilow</u>, 323 F.3d at 40 ("Where, as here, common

question predominate regarding liability, then courts generally find the predominance

requirement to be satisfied even if individual damages issues remain.").  Common

issues predominate.

### 2.    Superiority

Defendant stakes its claim on the superiority prong, which requires that a class

action be "superior to other available methods for fairly and effectively adjudicating the

controversy."  Fed. R. Civ. P. 23(b)(3).  A core purpose of Rule 23(b)(3) is to provide

plaintiffs with "negative value" claims, or claims whose value is too small to litigate

individually, with a means of redress.  <u>Amchem</u>, 521 U.S. at 617 (quotations and

citations omitted); <u>Smilow</u>, 323 F.3d at 42.  This case perfectly effectuates that

purpose, say plaintiffs.  Pls.' Mem. in Supp. of Mot. for Class Cert., Docket # 29, at 12.

The fees tenants paid and would seek to recover do not outprice litigation costs enough

to encourage individual suits.  <u>Id.</u>  And indeed, to plaintiffs' knowledge, nobody has

filed suit individually.

Defendant believes plaintiffs undervalue their claims.  It points to the

attractiveness of the Massachusetts Housing Court as a venue for individual claim

resolution.  Mem. in Opp. at 6-7.  Because of its low filing fees and speedy resolution of

claims, the Housing Court keeps litigation costs down.  <u>Id.</u>  Add to that the treble

damage and fee-shifting provisions of chapter 93A and the claim valuation is not so

lopsided in favor of class treatment.  <u>Id.</u> 7-8 (citing Mass. Gen. L. ch. 93A § 9).

I am not persuaded.  For one thing, the Housing Court is simply not available in

many parts of the Commonwealth.  Note its website:

> The Housing Court does not have jurisdiction to hear cases from the
> following locations: all of Barnstable, Dukes, and Nantucket counties;
> Norfolk County (except the Town of Bellingham); Suffolk County (except
> the City of Boston); and several cities and towns in the southern and
> eastern portions of Middlesex County (such as Cambridge, Framingham,
> and Somerville).  The District Court covers these locations . . . .

Housing Courts by County,

http://www.mass.gov/courts/court-info/trial-court/hc/hc-by-county-gen.html (last visited

August 14, 2014).  Seventeen of the thirty-one, or fifty-five percent, of the properties

defendant manages are outside of covered areas.[17]  Needless to say, it is no solution to

suggest that plaintiffs seek redress in a court which lacks jurisdiction over their claims.

Moreover, defendant's argument, if true, comes at great expense of judicial

resource.  Piecemeal adjudication of individual suits wastes time.  Swack, 230 F.R.D. at

273.  Combine this inefficiency with the lack of Housing Court jurisdiction and the

inadequacy of individual litigation is clear.   As I recently explained, "[d]efendant loses

either way: if the proposed class members would press their claims, one class action is

superior to many individual actions, and if they would not, class action adjudication is

superior to no adjudication."  Sparkle Hill, Inc. v. Interstate Mat Corp., No. 11-10271-

RWZ, 2012 WL 6589258, at *4 (D. Mass. Dec. 18, 2012).  There is no doubt that a

class action is a superior way to adjudicate this dispute.

### F.   Subclass Periods

The statute of limitations period for actions alleging violation of chapter 93A or

---

[17]To calculate this figure, I compared the list of properties defendant manages, Docket # 30-1, with the list of counties over which the Housing Court has jurisdiction.

chapter 186 section 15B is four years.  Mass. Gen. L. ch. 260 § 5A.  The Perrys filed

their Class Action Complaint on May 1, 2012.  Docket # 1.  The Class Action Complaint

alleged that only the move-in/amenity fee was unlawful.  Working back four years from

this date, the parties agree that the period for the move-in/amenity/community fee

subclass begins on May 1, 2008.  See Mem. in Opp. at 13.  Plaintiffs filed the

Consolidated and Amended Class Action Complaint on February 19, 2013.  Docket #

41.  Using the same statute of limitations, the parties further agree that the period for

the application fee and up-front pet fee subclasses begins on February 19, 2009.

Mem. in Supp. at 15; Mem. in Opp. at 13.

   The disagreement centers on the proper end date of the subclass periods.

Defendant proposes that the move-in/amenity fee period end on February 28, 2012,

and the application fee period end on September 27, 2013, because defendant stopped

charging the respective fees on those dates.  Mem. in Opp. at 12-13.  If that is true,

then defendant has no cause to worry because no plaintiff will have a claim during the

time when defendant had discontinued charging fees.  Defendant's proposed end date

is unnecessary.

   **G.    Subclasses and Subclass Counsel**

   I certify three subclasses,[18] defined as follows:

- Subclass 1: All current and former tenants or prospective tenants at
  residential apartment units operated and/or managed by Equity
  Residential Management in the Commonwealth of Massachusetts who, at
  or prior to the commencement of his or her tenancy, paid an application

---

[18]The following subclasses pertain only to defendant Equity Residential Management, LLC.  If
necessary, I shall address the claims against the four other named defendants in Vincelette later.

fee between February 19, 2009 and the date of judgment. The following individuals are appointed as subclass representatives: Brian Perry, Kim Perry, Cheryl Miller, Marianna Vincelette, Richard Vincelette, Joseph Barnes, Colin Appleton, Rhett Kleinschmidt, and Brittany Franco.

- <u>Subclass 2</u>: All current and former tenants or prospective tenants at residential apartment units operated and/or managed by Equity Residential Management in the Commonwealth of Massachusetts who, at or prior to the commencement of his or her tenancy, paid an amenity fee, move-in fee, or community fee, between May 1, 2008 and the date of judgment. The following individuals are appointed as subclass representatives: Brian Perry, Kim Perry, Cheryl Miller, Marianna Vincelette, Richard Vincelette, Joseph Barnes, Colin Appleton, Rhett Kleinschmidt, and Brittany Franco.

- <u>Subclass 3</u>: All current and former tenants or prospective tenants at residential apartment units operated and/or managed by Equity Residential Management in the Commonwealth of Massachusetts who, at or prior to the commencement of his or her tenancy, paid an up-front pet fee between February 19, 2009 and the date of judgment. The following individuals are appointed as subclass representatives: Marianna Vincelette, Richard Vincelette, and Joseph Barnes.

I appoint Matthew J. Fogelman of Fogelman & Fogelman LLC, David Pastor of Pastor Law Office LLP, Preston W. Leonard of Leonard Law Office, PC, and Julie Schreiner-Oldham, Kevin T. Peters, and Michael Brier of Arrowood Peters, LLP, as counsel for each subclass. I shall address the division among counsel of any recovered attorneys' fees later. <u>See</u> Fed. R. Civ. P. 23(g)(1)(E) (stating court may make further orders in connection with appointment of class counsel).

## V.    Conclusion

Defendant's motion to consolidate cases (Docket # 46) is ALLOWED. Plaintiffs' cross-motion for summary judgment (Docket # 69) is ALLOWED as to Counts I and II in all respects save for the monthly pet fee and DENIED in all other respects. Defendant's cross-motion for summary judgment (Docket # 56) is DENIED. Plaintiffs'

21

motion for class certification (Docket # 28) is ALLOWED.

Liability now clear, only calculation of damages remains.  Before they embark on this potentially burdensome undertaking, the parties may wish to discuss a mutually agreeable resolution of this matter.

The court has scheduled a status conference for September 30, 2014, at 2:00 p.m.


    August 26, 2014                                     /s/Rya W. Zobel

DATE                                        RYA W. ZOBEL
                                             UNITED STATES DISTRICT JUDGE